1  LYNN R. FIORENTINO (SBN 226691)
   lynn.fiorentino@afslaw.com
2  SUSANNE BONIADI (SBN 341512)
   susanne.boniadi@afslaw.com
3  **ARENTFOX SCHIFF LLP**
   555 S. Flower St., 43rd Floor
4  Los Angeles, CA  90071
   Telephone:  213.629.7400
5  Facsimile:  213.629.7401

6  Attorneys for Defendant
   UNILEVER UNITED STATES, INC.
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | MONICA DAWKINS, individually and on behalf of all others similarly situated, | Case No. 5:25-cv-02378
12 | | **CLASS ACTION**
13 | Plaintiff, |
   |  | **DEFENDANT UNILEVER INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
14 | v. |
15 | UNILEVER UNITED STATES, INC., a Delaware corporation, |
16 | Defendant. | *[Filed concurrently with Notice of Motion, Declaration of Susanne Boniadi and [Proposed] Order]*
17 | |
18 | | Date:        December 8, 2025
   | | Time:        1:30 p.m.
19 | | Courtroom:   10A (10th Floor)
   | | Judge:       Stephen J. Wilson
20 | |
21 | | Date Action Filed: February 12, 2025

22

23

24

25

26

27

28

Case No. 5:25-cv-02378                    - 1 -

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 9

II.     PLAINTIFF'S BOILERPLATE ALLEGATIONS ................................. 11

III.    STATUTORY FRAMEWORK ................................................................ 12

IV.     STANDARD OF REVIEW ..................................................................... 16

V.      PLAINTIFF HAS NOT ALLEGED ANY INJURY-IN-FACT AND
        LACKS STANDING. ............................................................................. 17

VI.     THE COURT LACKS PERSONAL JURISDICTION OVER
        UNILEVER. ........................................................................................... 19

        A.     General Jurisdiction Does Not Exist Over Unilever .......................... 20

        B.     Specific Jurisdiction Does Not Exist Over Unilever . ....................... 20

VII.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST UNILEVER. ........ 23

        A.     Unilever, as a Party to the "Communications," Cannot Intercept
               Them as a Matter of Law. ............................................................ 24

        B.     Pen Registers and Trap and Trace Devices Are Limited to
               Telephones. ................................................................................. 26

        C.     Plaintiff Expressly Alleges Facts Indicating the Software
               Obtains the Content Of "Communications." ................................. 28

VIII.   CONCLUSION ....................................................................................... 29

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................... 17

*Aviles v. Liveramp, Inc.,*
  No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025)................... 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................... 16

*Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco
  County*
  (2017) 137 S. Ct. 1773 .................................................................. 23

*Calder v. Jones*
  (1984) 465 U.S. 783 ...................................................................... 21

*cf. Greenstein v. Noblr Reciprocal Exch.,*
  585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022) ....................................... 19

*Clark v. Martinez,*
  543 U.S. 371 (2005) ...................................................................... 17

*Cline v. Reetz-Laiolo,*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018)............................................... 24

*Conohan v. Gen Digital Inc,*
  No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655 (C.D. Cal. Feb.
  19, 2025).............................................................................. 20, 21

*Daghaly v. Blommingdales.com, LLC,*
  2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........................................ 18

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ...................................................................... 20

*Dole Food Co., Inc. v. Watts,*
  303 F.3d 1104, 1111 (9th Cir. 2002)................................................... 21

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Gabrielli v. Insider, Inc.,*
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18,
2025) ...................................................................................................... 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915, 924 (2011) ...................................................................... 20

*In re Google Inc.,*
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26,
2013) ...................................................................................................... 24

*Hasson v. FullStory, Inc.*
(3d Cir. 2024) 114 F.4th 181 ................................................................. 22

*Heiting v. HP Inc.,*
24STCV29634 (L.A. Sup. Aug. 1, 2025) ......................................... 25, 26

*Heiting v. Marriott Int'l, Inc.,*
743 F. Supp. 3d 1163 (C.D. Cal. 2024) ................................................. 20

*Helicopteros Nacionales de Colombia S.A. v. Hall*
(1984) 466 U.S. 408 .......................................................................... 20, 21

*Hughes v. Vivint, Inc.,*
2024 WL 5179916 (C.D. Cal. 2024) ..................................................... 19

*J.M. Smucker Company*, 2023 WL 4053796, at *4 (C.D. Cal. June 15,
2023) ...................................................................................................... 22

*Jacqueline B. v. Rawls Law Group, P.C.,*
68 Cal.App.5th 243 (2021) .............................................................. 22, 23

*Jones v. Bloomingdales.com, LLC,*
No. 23-3304, 2024 WL 5205528 (8th Cir. Dec. 24, 2024) ................... 18

*Khamooshi v. Politico, LLC,*
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ......................................... 19

*Kishnani v. Royal Caribbean*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .................................. 19, 28

*Konop v. Hawaiian Airlines, Inc.,*
302 F.3d 868 (9th Cir. 2002) ................................................................. 14

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Licea v. Hickory Farms LLC*,
    No. 23STCV26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024) ............... 28

*Lindsay-Stern v. Garamszegi*,
    2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) ................................................ 25

*Massie, supra*, 2021 WL 2142728, *6 ........................................................... 22

*Matus v. Premium Nutraceuticals, LLC*
    (9th Cir. 2018) 715 F. App'x 662 ................................................................... 22

*Mejia v. Reed*
    (2003) 31 Cal. 4th 657 ................................................................. 13, 17, 24

*Mikulsky v. Noom*
    682 F.Supp. 3d 855, 867–68 (S.D. Cal. 2023) ............................................... 23

*Mitchener v. CuriosityStream, Inc.*,
    No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6,
    2025) ................................................................................................................ 19

*NovelPoster v. Javitch Canfield Grp.*,
    140 F.Supp.3d 938 (N.D. Cal. 2014) .............................................................. 25

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ........................................................................ 16

*People v. Avery*
    (2002) 27 Cal. 4th 49 ...................................................................................... 17

*People v. Nakai*
    (2010) 183 Cal. App. 4th 499 .................................................................. 14, 24

*Popa v. Microsoft Corp.*,
    No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .................................. 18

*Powell v. Union Pac. R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................................ 13

*Price v. Headspace, Inc.*,
    No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01,
    2025) ................................................................................................................ 29

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378            5

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal.Super. July 09, 2024) ................ 19

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal.Super. Oct. 02, 2024) ................ 18

*Rogers v. Ulrich*
(1975) 52 Cal. App. 3d 894, 898 .................................................... 14, 25

*Rosenthal v. Bloomingdales.com, LLC*
(1st Cir. 2024) 101 F.4th 90 .......................................................... 22

*Rounds v. Case-Mate, Inc.*,
No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal.
July 2, 2025) ........................................................................... 20

*Sacco v. Mouseflow, Inc.*,
No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361 (E.D. Cal. Sept.
30, 2022) ............................................................................... 23

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .............................................. 23

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025) ................ 18

*Schwarzenegger v. Fred Martin Motor Co.*
(9th Cir. 2004) 374 F.3d 797 .................................................... 21, 23

*Shapiro v. United States*,
335 U.S. 1 (1948) ..................................................................... 27

*Steilberg v. Lackner*
(1977) 69 Cal. App. 3d 780 .......................................................... 12

*Tavernetti v. Superior Court*
(1978) 22 Cal.3d 187 .................................................................. 13

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
813 F. App'x 316 (9th Cir. 2020) ................................................... 22

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .................................................... 17, 18

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*United States v. VanDyck*,
   776 F. App'x 495 (9th Cir. 2019)........................................................................18

*Valenzuela v. Alexander Wang, LLC*,
   23STCV12422 (L.A. Superior Ct., Dec. 27, 2023)...........................................13

*Vita v. New England Baptist Hosp.*,
   494 Mass. 824, 243 N.E.3d 1185 (2024)............................................................12

*Vons Companies, Inc. v. Seabest Foods, Inc.*
   (1996) 14 Cal.4th 434........................................................................................19

*Warden v. Kahn*
   (1979) 99 Cal. App. 3d 805...................................................................13, 14, 17

**Statutes**

18 U.S.C. § 3127(3)(4).............................................................................................27

Cal. Gov't Code § 8231.18(c)(3)(A)(iv) .................................................................27

Cal. Penal Code § 629.51 ..................................................................................15, 25

Cal. Penal Code § 630 .............................................................................................13

Cal. Penal Code § 631 ........................................................................................13, 14

Cal. Penal Code § 632 ....................................................................................13, 14, 24

Cal. Penal Code § 637.2(a) .....................................................................................17

Cal. Penal Code § 638.50 ...............................................................................*passim*

Cal. Penal Code § 638.51 ...............................................................................*passim*

Cal. Penal Code § 638.52 ...............................................................................*passim*

Cal. Penal Code § 638.53 ...............................................................................*passim*

Cal. Penal Code § 638.54 ..................................................................................26, 27

Civ. Code § 1798.140 ..............................................................................................12

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Other Authorities**

California Assembly Bill No. 929 ............................................................... 15

California Consumer Privacy Act ("CCPA") ................................................. 9, 12, 16

California Invasion of Privacy Act ("CIPA") ................................................ *passim*

Rule 12(b)(2) ............................................................................................ 16

Rule 12(b)(6) ............................................................................................ 16

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378

8

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      This case is the latest in an avalanche of cookie-cutter complaints under a

4   statute that was enacted *solely* for the purpose of *authorizing* law enforcement

5   agencies to *intercept* the "signaling information" – but not the content – of telephone

6   calls.[1]  What does this case have to do with court-authorized law enforcement

7   interception of the telephone numbers called by potential criminals?  Absolutely

8   nothing.  Instead, this case effectively seeks to criminalize the Internet through a bait

9   and switch.  That is, it concerns the *reception* – not the *interception* – of online data

10   exchanges and common website analytics tools used by website operators, under the

11   novel theory that these technologies amount to illegal "trap and trace" devices under

12   section 638.51 of the California Invasion of Privacy Act ("CIPA"), a criminal statute.

13      But how common is it for website operators to obtain "signaling information"

14   and use analytics tools – as expressly authorized under the California Consumer

15   Privacy Act ("CCPA"), the actual law that governs the online privacy issues at here?

16   The Court's PACER website admittedly "collect[s] and store[s]" every visitor's "IP

17   address" and the "type of browser and operating system used to access the

18   pacer.uscourts.gov site."[2] The Los Angeles County Superior Court discloses that it

19   engages in "USER TRACKING AND DATA CAPTURE PRACTICES," expressly

20   including the collection of "IP addresses" "to help us improve our web sites."[3]  In

21   addition, the Court's PACER website, and the Supreme Court of California all use

22   Google Analytics, which sends Google the same data at issue.[4] The Governor's

23

---

24   [1]   *See* Declaration of Susanne Boniadi ("Boniadi Decl."), ¶ 11, Ex. G.
     [2]   *See* https://pacer.uscourts.gov/privacy, *see also* Boniadi Decl., ¶ 2, Ex. A.
     [3]   *See* https://www.lacourt.org/website/HO0050.aspx.
25   [4]   *See* https://support.google.com/analytics/answer/11593727?hl=en.  Google publicly discloses that

26   its Google Analytics cookie also collects various demographic data such as age range, gender, city, etc., by
     default; *see also* https://www.cnn.com/2023/03/24/tech/tiktok-ban-national-security-hearing/index.html
27   ("TikTok is not unique: the same tool is used by **US tech giants including Facebook-parent Meta and
     Google** *on a far larger scale*, according to Malwarebytes, a leading cybersecurity firm.) (emphasis added).

28

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378                    9

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

official website openly incorporates a TikTok plugin,[5] and deploys Google Analytics and the Meta Pixel, the latter of which similarly allows Meta to identify specific Facebook and/or Instagram users that have visited the Governor's site.[6]  Both the California Attorney General and the California Privacy Protection Agency – the government agencies literally tasked with protecting Californians' privacy rights, including under CIPA – also use Google Analytics and the Meta Pixel on their respective websites without any conspicuous disclosure.[7]  So too does the Speaker of the Assembly on his official and personal websites.[8]

Last but not least, Plaintiff's counsel discloses through their website privacy policy – no differently than the Dove website at issue – that "[w]hen you visit the Site, we automatically collect certain information about your device, including information about your web browser, IP address, time zone, and some of the cookies that are installed on your device."[9]  These cookies "often include an anonymous unique identifier" so visitors can be identified and tracked, including through "Log files" that "track actions occurring on the Site, and collect data including your IP address, browser type, Internet service provider, referring/exit pages, and date/time stamps."  *Id.*  This automatic data collection also expressly occurs using "'Web beacons,' 'tags' and 'pixels,'" the exact technologies at the center of the Complaint.  In other words, Nathan & Associates publicly boasts that it is "violating" Section 638.51 of the Penal Code ***exactly*** as it is accusing Unilever in its form Complaint.  *See* Compl. ¶ 10.  It is therefore difficult to imagine a less principled pursuit of other businesses for setup claims under a criminal law – for doing exactly what Nathan & Associates is ***admittedly*** doing itself.

Does this mean that Plaintiff's counsel and ***every level*** of government in

---

[5]    *See* https://www.gov.ca.gov/; *see also* Boniadi Decl., ¶ 3, Ex. B.
[6]    *See* Boniadi Decl., ¶ 4, Ex. C.
[7]    *See Id.*, ¶¶ 5-6, Exs. D, E.
[8]    *See Id.*, ¶ 7, Ex. F.  It should be safe to assume Legislators do not generally pass laws that *should* result in their immediate imprisonment.
[9]    *See* https://www.nathanlawpractice.com/privacy-policy/.

California are also violating Section 638.51 of the Penal Code?  More than that, if it were a violation of Section 638.51 for the receiving party to "collect" the "signaling information" associated with a "communication" without a court order – which is exactly Plaintiff's theory here, Compl. ¶ 3 – then tens of millions of Californians violate this law every day by using Caller ID on their phones.  Ultimately, however, Section 638.51 and its regulation of obscure "pen registers" and "trap and trace devices" have nothing to do with how public and private entities operate their websites – the California Legislature did not silently criminalize the Internet.

Before getting to the merits, if ever, however, the Court must confront that it lacks both subject matter jurisdiction over Plaintiff's claim and personal jurisdiction over Unilever. The Ninth Circuit has clearly ruled there is no reasonable expectation of privacy, or possible injury, when an individual visits a website and routine metadata is collected and shared.  Similarly, numerous courts have held in indistinguishable cases that website operators like Unilever cannot be haled into a California court simply because a California plaintiff *targets them*.  This would turn the standards of personal jurisdiction on their head.  At bottom, the Court has no jurisdiction over this case or Unilever, and never can, based on Plaintiff's express dispute concerning how Unilever operates its website generally.

## II.    PLAINTIFF'S BOILERPLATE ALLEGATIONS

Plaintiff seeks to hold Unilever liable under the California Penal Code because, like the Court's and her counsel's websites, Unilever allegedly utilizes software that can collect a visitor's IP address and other information, such as "browser and device type, screen resolution, installed fonts, color depth, timezone, operating system, [and] pages visited." Compl. ¶ 10.  Plaintiff claims to be a resident of Riverside who visited the Dove website[10] "within the statutory period," and that is the sum total of the

---

[10]    Unless otherwise indicated, all references to "the website" are to the Dove website located at www.dove.com.  As indicated in the website's Terms of Use, the website "is being offered by a subsidiary of Unilever United States, Inc."  *See* https://www.unileverus.com/terms/termsofuse.html.  Thus, Unilever

allegations specific to Plaintiff in the entire Complaint. *Id.* ¶¶ 1, 16. Plaintiff generically (and curiously) alleges that the Dove website "allows customers to explore product information, nutrition details, promotions, recipes, and brand initiatives." *Id.* ¶ 20.[11] But there is not a single well-pled allegation in the Complaint that Plaintiff communicated or interacted with anyone through the website, purchased anything through the website, or experienced any consequences.

## III.   **STATUTORY FRAMEWORK**

California's first-in-the-nation comprehensive privacy law, the California Consumer Privacy Act ("CCPA"), gives consumers control over their personal data and governs businesses' online data practices, required disclosures, and how those disclosures must be made. See Title 11, Div. 6, Ch. 1 § 7012(c)(1). When website operators provide notice through a linked privacy policy, they may collect visitors' personal information subject to the rights to (1) know, (2) delete, (3) opt out, and (4) non-discrimination. *See* Title 11, Div. 6, Ch. 1 § 7012(c)(1).[12] There is no claim here that Unilever is not in compliance with any applicable requirements under the CCPA, the law that was enacted to specifically address online privacy issues, expressly including the use of website "**cookies, beacons, pixel tags**, **mobile ad identifiers**, or similar technology" – the exact technology Plaintiff complains about here.   Civ. Code § 1798.140 (emphasis added).  It "is a cardinal rule of statutory interpretation that specific statutory regulations control over the general statutes." *Steilberg v. Lackner* (1977) 69 Cal. App. 3d 780, 788.[13]

As for such general statutes, Plaintiff's claim arises under CIPA, a law

---

itself does not operate the website, but is rather a holding company that does not purposefully direct any activity relevant to the Complaint into California.

[11]    The website does not in fact provide recipes or nutritional information for Dove soaps.

[12]    *See* California Privacy Protection Agency, What General Notices Are Required By The CCPA? (ca.gov); *see also* California Consumer Privacy Act (CCPA) | State of California - Department of Justice - Office of the Attorney General.

[13]    In a thoughtful decision directly relevant to the case at bar, the Massachusetts Supreme Court held that its state's comparable "wiretapping" law simply does not apply to website analytics tools. *See Vita v. New England Baptist Hosp.*, 494 Mass. 824, 839, 243 N.E.3d 1185, 1198 (2024).

originally enacted in 1967 – well before the Internet age – for the express purpose of preventing "eavesdropping upon private communications" and "the invasion of privacy resulting from the continual and increasing use" of "modern listening devices." Penal Code § 630. The California Legislature wanted to prevent snooping on **private *conversations***, and this is Plaintiff's attempt to put a square peg in a round hole. While Plaintiff's claim arises under Section 638.51, a 2015 addition to CIPA, it is critical to understand the statutory context of CIPA to appreciate why Section 638.51 cannot apply to website operators.[14]

First, there is the "interception" prohibition under CIPA Section 631 – which applies to **third-party** "wiretapping" of private communications in transit over a wire. The California Supreme Court has held that Section 631 protects against three types of harms: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in transit** over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court* (1978) 22 Cal.3d 187, 192 (emphasis added). Critically, given CIPA's express purpose of preventing eavesdropping and as a further common-sense guardrail, Section 631 consistently "has been held to apply only to eavesdropping **by a third party** and ***not to recording*** by a participant to a conversation." *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811; *see also Valenzuela v. Alexander Wang, LLC*, 23STCV12422 (L.A. Superior Ct., Dec. 27, 2023) (finding that website operator is **categorically immune** from liability under Section 631 of CIPA – as "[e]mploying another to record one's conversations is the sort of conduct that would be outlawed by section ***632***," rather than section 631) (emphasis added).[15]

---

[14]    "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect," and separate sections, like Sections 638.51 and 638.52, "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed* (2003) 31 Cal. 4th 657, 663.
[15]    *See also Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012).

As for recording by a party, Section 632 – and *not* Section 631's third-party interception prohibition – applies to those who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Penal Code § 632. This language has uniformly been construed to prohibit one party to a *confidential* communication from recording that communication without the knowledge or consent of the other party. *Warden*, 99 Cal. App. 3d at 812. *See People v. Nakai,* (2010) 183 Cal. App. 4th 499, 519, (analyzing whether to exclude recorded **sexual** chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user").

The Court of Appeal in *Rogers v. Ulrich* fully embraced this conclusion as well: "a recording made by a participant **does <u>not</u> intercept** the message **while it is in transit**; the recording rather transcribes the message as it is being **<u>received</u>**." *Rogers*, (1975) 52 Cal. App. 3d 894, 898 (emphasis added). The key takeaway is this: under decades of binding CIPA precedent, parties to a communication do ***<u>not</u>*** ***<u>intercept</u>*** their own messages; they **<u>receive</u>** them. This makes sense because intercepting a communication means "to stop, seize, or interrupt in progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). That is why it is impossible for any party to "intercept" that same communication at its destination – here, the Dove website.

The "pen register/trap and trace" sections of CIPA were a 2015 addition against this well-settled backdrop. The **<u>sole</u>** "purpose of this bill [was] to authorize **state and local law enforcement** to use pen register and trap and trace devices under state law, and to permit the issuance of emergency pen registers and trap and trace

devices."[16]  According to the bill's author:

> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all ***outgoing* numbers from a particular telephone line**. In addition, another tool law enforcement uses is called a 'trap and trace device' which **allows them to record what numbers have called a specific telephone line**, i.e. all ***incoming* phone numbers**. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.[17]

This law was enacted for no other reason than to *facilitate* law enforcement's ability – as a third party – to ***intercept*** the **telephone numbers**, but not the content, of calls and text messages in transit over **telephone lines**. Significantly, there is not a single reference in the legislative history of this law having any impact on the parties to communication, let alone anything about websites.

Under fifty years of binding CIPA precedent, parties to a communication do not "intercept" anything, they *receive* or *store.*  And critically, the scope of the regulation of "trap and trace devices" (not) at issue here is **<u>expressly limited</u>** "to the **interceptions** of wire and electronic communications." Penal Code §§ 629.51, 638.50 (emphasis added).  That is, the definitions employed in Sections 638.51-53 relevant here "have the meanings set forth in subdivision (a) of Section 629.51," *id.* § 638.50.  And as the Legislature made immediately clear after defining these terms, it expressly limited their scope to communications *being intercepted*: "[t]his chapter applies to the interceptions of wire and electronic communications. It does not apply to stored communications or stored content" and "[t]he act that added this subdivision is not intended to change the law as to stored communications or stored content." Cal. Penal Code § 629.51(b)-(c).  In other words, applying these statutes to anyone with Caller ID *or* website operators ***would change the law*** as to stored communications – the ***exact opposite*** of the Legislature's clearly expressed intent.

---

[16]    *See* 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (June 16, 2015).
[17]    *Id.*

Similarly reinforcing that this law only applies to particular *third* parties, rather than parties to a communication, Sections 638.51-53 only encompass two distinct entities: **communications service providers and law enforcement**. That's it. Specifically, Section 638.51 – which incorporates the definitions limited to interceptions – provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Penal Code § 638.51(a). Subsection (b) of 638.51 provides certain exceptions – but only for "[a] provider of electronic or wire communication service" – such as to provide such services or with the consent of the user. *Id.* at 638.51(b)(1)-(5).

Sections 638.52 and 638.53, in turn, only apply to "a peace officer" and their ability to "make an application to a magistrate for an order … approving the installation and use of a pen register or a trap and trace device." Any such order issued by a magistrate **must identify** "the person to whom is leased or in whose name is listed **the telephone line** to which the pen register or trap and trace device **is to be attached**." Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "shall specify" the "physical location of the **telephone line** to which the pen register or trap and trace is to be attached"). The statutes at issue here thus do not even contemplate *any* application to a party to any communication, let alone to website operators comprehensively regulated by the CCPA. For good reason – it has no application to a first party.

## IV.    **STANDARD OF REVIEW**

On a Rule 12(b)(2) motion, the court may look beyond the pleadings, and the plaintiff bears the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To survive Rule 12(b)(6), the complaint must plead enough facts to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists only when facts—not conclusions—

1    permit a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2    The Court accepts well-pleaded facts as true but not threadbare element recitals or

3    mere conclusory statements. *Id* at 678.

4        In addition, the Court not only needs to interpret Section 638.51 consistent

5    with the overall statutory framework, *see Mejia v. Reed* (2003) 31 Cal. 4th 657, 663,

6    but also construe **any ambiguities** in favor of Unilever given that Plaintiff seeks to

7    enforce a penal law.  *See People v. Avery* (2002) 27 Cal. 4th 49, 58; *see also Warden*

8    *v. Kahn* (1979) 99 Cal. App. 3d 805, 814, 818, n.3.[18]

9  **V.    PLAINTIFF HAS NOT ALLEGED ANY INJURY-IN-FACT AND**

10       **LACKS STANDING.**

11       Plaintiff's Complaint should be dismissed on the threshold grounds that she

12   never alleges *any* concrete injury stemming from her alleged visit to the website,

13   which is a statutory requirement for any claim under CIPA, as well as a jurisdictional

14   requirement under Article III.  *See* Cal. Penal Code § 637.2(a) ("Any person who has

15   been ***injured*** by a violation of this chapter may bring an action against the person

16   who committed the violation") (emphasis added).  In a case directly addressing the

17   use of the technology ostensibly at issue here, the Ninth Circuit reiterated precedent

18   that "people do not have a subjective expectation of privacy in … the addressing

19   information" associated with their communications.  *United States v. Forrester*, 512

20   F.3d 500, 509 (9th Cir. 2008).  And even if they did, "it would not be one that society

21   is prepared to recognize as reasonable."  *Id.*  The Court of Appeals then expressly

22   held that "e-mail and Internet users have no expectation of privacy in the to/from

23   addresses of their messages or the IP addresses of the websites they visit."

24       Plaintiff cannot have suffered any injury here as a matter of law when there

25   can be no legitimate expectation of privacy in the metadata associated with visiting

26

27   ───────────────

[18]      Principles of statutory interpretation require that acts of a legislative body receive **uniform interpretation**, regardless of whether the law is invoked in an administrative, civil, or criminal case. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005).

28

a commercial website. Put differently, there cannot possibly be a close common law analogue here when there is zero legitimate expectation of privacy with the exact devices and signaling information. *See also United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019).[19]

The Ninth Circuit recently rejected an analogous "website violation of privacy" claim. In that case, the plaintiff alleged the site used third-party technologies to "capture[] … over 30 different categories [of information] including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at 2 (9th Cir. Aug. 26, 2025); cf. Compl. ¶ 10. Evaluating the asserted "protected privacy rights," the court held such collection is not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," likening it "to a store clerk's observing shoppers," and concluding such generalized "privacy grievances" do not establish standing after *TransUnion*. *Id*. at 5; *see also Daghaly v. Blommingdales.com, LLC*, 2024 WL 5134350, 1 (9th Cir. Dec. 17, 2024); *Jones v. Bloomingdales.com, LLC*, No. 23-3304, 2024 WL 5205528, at 4 (8th Cir. Dec. 24, 2024) (affirming dismissal because plaintiff "has not plausibly alleged that she suffered a concrete injury, and so she lacks standing to bring these suits. We do so not because we think she experienced only a slight

---

[19]    *See also Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal.Super. Jan. 28, 2025) (adopting *Forrester* and noting that court's own website – and websites generally – "track the IP addresses of their visitors."); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *5 (Cal.Super. Jan. 27, 2025) ("even if, arguendo, the collection of Plaintiff's IP address constitutes operation of a pen register, Plaintiff has no reasonable expectation in the privacy of her computer's IP address since she chose to access the Website."); *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal.Super. Oct. 02, 2024) (dismissing form CIPA complaint and further denying leave to amend).

invasion of her privacy, ... but because her allegations do not plausibly suggest that she suffered **any such invasion at all**.") (emphasis added).

These cases are not unique.  Indeed, lack of injury was one of the grounds for dismissal in multiple cookie-cutter "trap and trace" cases.  *See Kishnani v. Royal Caribbean*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (holding no injury as matter of law, and dismissing trap-and-trace claim with prejudice); *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (same); *Khamooshi v. Politico, LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025); *Hughes v. Vivint, Inc*., 2024 WL 5179916 (C.D. Cal. 2024); *see also Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal.Super. July 09, 2024).

This case is no different.  Merely visiting a public website can hardly cause any concrete injury from its collection of admittedly *anonymous* data.  Compl. ¶ 92; c*f. Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022). Plaintiff never even attempts to allege any injury in her boilerplate Complaint, and that is sufficient by itself to dismiss this case because she cannot make out a *prima facie* case for the Court to assert jurisdiction over it.  *See Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissing trap-and-trace complaint with prejudice because lack of any harm associated with collection of anonymous metadata "cannot be cured with an amendment.").

## VI.    THE COURT LACKS PERSONAL JURISDICTION OVER UNILEVER.

California courts may exercise personal jurisdiction over a nonresident if "minimum contacts" make jurisdiction consistent with "traditional notions of fair play and substantial justice." *Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 435. Minimum contacts may be either general or specific.  *Id*. at p. 445.

"General jurisdiction" rests on "substantial" or "continuous and systematic" forum activities, allowing jurisdiction in all matters; "specific jurisdiction arises when a defendant's contacts with the forum give rise to the claim in question." *Helicopteros Nacionales de Colombia S.A. v. Hall* (1984) 466 U.S. 408, 414–416.

### A.    <u>General Jurisdiction Does Not Exist Over Unilever.</u>

For a corporation, the paradigm forum for the exercise of general jurisdiction is the place in which the corporation is fairly regarded as "at home," meaning (1) its place of *incorporation;* and (2) its *principal place of business*.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Here, Unilever is a Delaware corporation with its principal place of business in New Jersey, with no alleged presence in California. Compl., Introduction. Therefore, Unilever cannot be said to be "at home" in California for purposes of conferring general jurisdiction, as it is not incorporated in or have its principal place of business in California.

### B.    <u>Specific Jurisdiction Does Not Exist Over Unilever .</u>

With no general jurisdiction, Plaintiff must show specific jurisdiction but cannot: her claim does not arise from any activity Unilever *purposefully directed at Plaintiff in California*. Numerous courts have dismissed website operators for lack of personal jurisdiction in "wiretapping" lawsuits filed in California for the same reason – a website's collection of *incoming* data is the opposite "express aiming." *See Rounds v. Case-Mate, Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at 7 (C.D. Cal. July 2, 2025*); Heiting v. Marriott Int'l, Inc.,* 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024); *see also Conohan v. Gen Digital Inc,* No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at 2 (C.D. Cal. Feb. 19, 2025) (granting motion to dismiss CIPA complaint on personal jurisdiction grounds after finding plaintiff could not establish that "the defendant **'individually targeted' a plaintiff** in that specific forum.").

Plaintiff must show Unilever "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 802. Because this is tort, apply purposeful direction. *Id.* The "effects test" requires facts showing Unilever "(1) committed an intentional act, (2) **expressly aimed at the forum state**, (3) causing harm that [Unilever] knows is likely to be suffered in the forum state." *Id.* at p. 803 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (emphasis added); *Calder v. Jones* (1984) 465 U.S. 783. Even if satisfied (it is not), Plaintiff must tie her claim to the directed act. *Id.*

Here, Plaintiff sued a holding company that does not operate the website. Even if the correct entity were sued, her jurisdictional theory rests on a conclusory claim that the Dove site drives Unilever's U.S. digital engagement and integrates with retail partners. Compl. ¶ 20. The website sells nothing; consumers buy from third-party retailers. The Unilever subsidiary running the site is thus even further removed than the retailers dismissed in similar trap-and-trace cases because no claim arises from any website purchase. *See Helicopteros*, supra, 466 U.S. at 418 ("Mere purchases, even if regular, are insufficient for in personam jurisdiction in actions unrelated to those purchases.").[20]

Numerous courts have held in indistinguishable cases that exercising personal jurisdiction over Unilever would violate due process here under indistinguishable circumstances. For example, in *Massie*, a California federal court held that *General Motors* was not subject to personal jurisdiction in California because "Plaintiffs' claims arise from and relate to session recording software allegedly installed on GM's **nationally accessible websites**, software that GM licensed and used outside

---

[20]     Plaintiff will likely rely on the Ninth Circuit's inapposite *Herbal Brands* decision where the defendant's *sales through its website* were causing the plaintiff's alleged injury.  The court in *Gen Digital* recently held in dismissing an indistinguishable complaint, "*Herbal Brands* is only instructive as to the deficiency of Plaintiff's allegations. … Plaintiff does not even allege that he availed himself of Defendant's services as the plaintiff did in *Herbal Brands*."  *Gen Digital Inc*, 2025 WL 864655, at *2.

California, which allegedly assisted Decibel's interception of interactions with GM's websites." *Massie, supra*, 2021 WL 2142728, *6. Similarly, Judge Alsup held that The J.M. Smucker Company was not subject to personal jurisdiction in California in a suit involving the *general* deployment of the Meta Pixel on its nationally accessible website. *J.M. Smucker Company*, 2023 WL 4053796, at *4 (C.D. Cal. June 15, 2023).

In addition, two federal Courts of Appeal similarly dismissed "wiretapping" claims against non-forum defendants, holding that website analytics *generally* deployed on a company's website that collect incoming information do not *specifically* target the forum or its residents, and therefore specific jurisdiction is lacking. *See e.g.*, *Rosenthal v. Bloomingdales.com, LLC* (1st Cir. 2024) 101 F.4th 90, 93; *Hasson v. FullStory, Inc.* (3d Cir. 2024) 114 F.4th 181, 192 (affirming dismissal for lack of personal jurisdiction where defendant did not expressly aim its computer code at the forum by merely operating a website that was accessible in the forum); *accord Matus v. Premium Nutraceuticals, LLC* (9th Cir. 2018) 715 F. App'x 662, 663; *see also ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming dismissal based on a "highly interactive" website and product sales unconnected to Plaintiffs' claims). "If [Unilever] can be haled into California merely on the basis of its universally accessible website, then, under [Plaintiff's] proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California." *Matus, supra*, 715 F. App'x at 663.

California courts repeatedly dismiss similar CIPA claims against website operators for lack of personal jurisdiction. In *Jacqueline B. v. Rawls Law Group, P.C.*, 68 Cal.App.5th 243 (2021), the California Court of Appeal refused to exercise jurisdiction over a Virginia law firm despite its knowing representation of, and communications with, a California resident. *Id.* at 255. "Defendants did not

purposefully direct any activities toward California residents. At most, the law firm operated a website that could be accessed by California residents, but the website did not target California residents specifically and it was plaintiff who first contacted defendants." *Id.*  In *Mikulsky v. Noom*, the Southern District of California dismissed a CIPA claim for lack of specific personal jurisdiction because Plaintiff's allegations that Noom "knows that many users visit and interact with Noom's website while they are physically present in California…and Defendant knew that its practices would directly result in collection of information from California citizens" "fail[ed] to show conduct directly targeting the forum state" since "Plaintiff fail[ed] to include a single allegation detailing how [Noom's] 'interactive website' is targeted at California." 682 F.Supp.3d 855, 867–68 (S.D. Cal. 2023).  Like *Noom*, Plaintiff's Complaint contains "no allegations detailing the level of interactivity of [Unilever] website," "no allegations regarding whether [Unilever] use of [the pen register or a trap and trace device] specifically targets California users" and "no allegations showing that [Unilever website] specifically targets Californians." *Id.* at 868.[21]

Nationwide availability in California is not express aiming. Plaintiff visited a national website and alleges its software passively captured her browser's incoming data. Compl. ¶ 38. This is analogous to the situation where someone calls you, your phone logs their number, and they sue you across the country. The only targeting occurred by Plaintiff and the claims do not arise from forum-related activities. S*ee Schwarzenegger*, 374 F.3d at 802.  "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco County* (2017) 137 S. Ct. 1773, 1781.

## VII.  **PLAINTIFF FAILS TO STATE A CLAIM AGAINST UNILEVER.**

The foundational definitions, legislative intent, and overall statutory

---

[21]    *See also Sacco v. Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 515–16 (C.D. Cal. 2021).

framework make it impossible that a website operator can be liable under Section 638.51. Under binding precedent interpreting CIPA Section 632, a party to a communication can **disclose** the **actual content** of a communication exchanged over the Internet ***without any consent***. In fact, this is true even when one party to a conversation expects it to remain private, such as in *Nakai* above, where the parties recorded were engaged in sexual conversations with individuals who were posing as 12-year-old girls to catch pedophiles. *See*, *e.g.*, *Nakai*, 183 Cal. App. 4th at 518-19 (further holding that there can be no reasonable expectations of privacy with person-to-person communications over the Internet). Under Plaintiff's theory, these "predator catchers" couldn't even **collect** the otherwise ***anonymous*** "signaling information," such as an IP address associated with the underlying communication, the ***incriminating content*** which they were, again, free to broadcast to the world. [22] Clearly, this would produce a nonsensical result when CIPA is understood in context and as whole – which is precisely how the California Supreme Court mandates statutes be interpreted if there is any ambiguity. *See Mejia*, 31 Cal. 4th at 663. As established below, the statutes at issue here clearly do not apply to an alleged party like Unilever or to websites generally.

### A.      Unilever, as a Party to the "Communications," Cannot Intercept Them as a Matter of Law.

Unilever was the alleged party to the purported communications forming the basis of Plaintiff's sole claim under California Penal Code Section 638.51 and therefore could not have intercepted those communications as a matter of law. Section 638.51(a) provides that "a person may not install or use . . . a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Section 638.50 defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or

---

[22] *See also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018).

other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of any communication." Section 638.50 further provides that the "wire communication[s]" and "electronic communication[s]" ostensibly encompassed by CIPA Sections 638.50-53 "have the meanings set forth in subdivision (a) of Section 629.51." Penal Code § 638.50.

Critically, section 629.51 expressly limits these definitions "to **the interceptions** of wire and electronic communications. It does not apply to stored communications or stored content." *Id.* § 629.51(b) (emphasis added). Interception only occurs when a *third party* "halt(s) the transmission of the messages to their intended recipients," *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal. 2014). A party to the communication cannot, by definition, "intercept" it. *See*, *e.g.*, *Rogers*, 52 Cal. App. 3d at 898 ("a recording made by a participant **does not intercept** the message") (emphasis added). Indeed, "once an [electronic communication] has been received by the destination server, **a communication becomes 'stored'** and contemporaneous interception is no longer possible."). *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (N.D. Cal. Oct. 13, 2016) (emphasis added).

Here, the complaint does not allege, much less identify facts, suggesting that Defendant *intercepted* any of Plaintiff's communications with *another party*. Rather, the complaint alleges that Unilever was the operator of the Dove website that Plaintiff visited, and the anonymous data at issue is "trigger by user interactions with the Website." Compl. ¶ 41. This case is no different from *Heiting v. HP Inc.*, 24STCV29634 (L.A. Sup. Aug. 1, 2025).[23] In that case, plaintiff asserted a single claim for violation of Section 638.51, maintaining—just as here—that defendant's software embedded on its website constituted a trap and trace device. *Id.* at 3. In

---

[23] *See* Boniadi Decl., ¶ 3, Ex. A.

1    sustaining the demurrer, the court highlighted that "[t]he statute prohibits receiving

2    unauthorized information about incoming communications **from other parties—not**

3    **information that passes between plaintiff and defendant when plaintiff contacts**

4    **the defendant**." *Id.* at 5, 6 (emphasis added).

5        Because Unilever was the alleged party to the "communications" with

6    Plaintiff, it could not "intercept" those communications as a matter of law.

7    Interception occurs only when a third party interrupts a transmission between others

8    — not when a website operator receives information directly from a visitor. Given

9    that the website interactions form the sole basis of Plaintiff's claim, amendment

10   would be futile, and dismissal with prejudice is warranted on this ground alone.

11       **B.    Pen Registers and Trap and Trace Devices Are Limited to**
12       **Telephones.**

13       Plaintiff's Complaint should be dismissed with prejudice on the independent

14   ground that there is no support in Sections 638.50-54, when read as a whole, that this

15   law applies beyond telephonic communications – both voice (wire communication)

16   and text (electronic communication).   As established above, the only way a court

17   order for the use or installation of such devices can be issued is if the "peace officer"

18   specifically **identifies** "the person to whom is leased or in whose name is listed **the**

19   **telephone line** to which the pen register or trap and trace device **is to be attached**."

20   Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "shall specify" the

21   "physical location of the **telephone line** to which the pen register or trap and trace is

22   to be attached"); *see also id.* § 638.54(b)(1) (only contemplating the "person owning

23   or leasing the line to which the pen register or trap and trace device is attached").

24       If there is no telephone line being targeted, no court order can be issued to use

25   these devices.  And the *entire* point of this law was to "authorize[] state and local law

26   enforcement to use pen register and trap and trace devices under state law," subject

27   to court approval and oversight.  It would be absurd for the Legislature to intend that

28

this law also be applied to websites and the Internet, particularly those operated out of state, but then draft the statutes governing the court orders necessary to use these devices in a way that would ***make this result impossible***.  Conversely, if the Legislature had intended this law to apply to the Internet or website operators, thus largely impacting economic activity, with the risk of imprisonment, one would expect that it would reference the Internet at least ***once*** in either the statutory text or legislative history.  But the Legislature didn't do so. Instead, as established above, the Legislature was expressly operating with the understanding and intent that pen registers obtain information on the ***outgoing* telephone numbers** called or texted, while trap and trace devices collect the ***incoming* numbers** for calls or texts.

This becomes even clearer when one understands that the Legislature copied verbatim the definitions of "pen register" and "trap and trace device" directly from federal law.  *See* 18 U.S.C. § 3127(3)(4).  And it is a well-settled rule of statutory construction that the Legislature "must be considered to have adopted also the construction given by this Court to such language and made it a part of the enactment." *Shapiro v. United States*, 335 U.S. 1, 16 (1948).  In other words, the Court must assume here that the Legislature was aware that these definitions were interpreted to be limited to telephone lines, and did ***not*** reach any further, when they enacted this law.[24]

Thus, when these statutes are read in context and as a whole, it is clear that Sections 638.50-54 are strictly limited to telephonic communications (in transit) and have no application to the Internet or websites. Judge Pfahler recently dismissed another boilerplate trap-and-trace complaint, "strongly disput[ing]" that website operators could be in violation of this law every time a visitor voluntarily visited their

---

[24]    There is not a single reference in the legislative history of this law having any impact on the parties to a communication, let alone anything about websites or online privacy.  Other laws enacted before and after Section 638.51 ***mandate*** the collection of the "signaling information" of website visitors in various circumstances. *See, e.g.,* Cal. Gov't Code § 8231.18(c)(3)(A)(iv). It would be absurd to conclude that the Legislature intended for businesses to simultaneously ***violate criminal law*** to comply with their other legal obligations.

websites.[25] *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024). The Court should similarly hold here that Section 638.51 does not apply to website operators and dismiss this case with prejudice.

### C.    Plaintiff Expressly Alleges Facts Indicating the Software Obtains the Content Of "Communications."

As both California state courts and this Court's federal colleagues have expressly held when faced with the same cookie-cutter complaints, these plaintiffs are expressly alleging that the software at issue can "capture" the content of information submitted by a website visitor. Indeed, one of the central and irreconcilable contradictions of these cases is that Plaintiff's position is that simply visiting a website is somehow an "electronic communication." Compl. ¶ 79. And again, that is *all* Plaintiff is alleged to have done – "she visited the Website." *Id.* ¶ 16. Thus, if there is any "communication" involved here, absurd as that is in this context, it is the webpage itself that is the "content of the communication."

Yet a trap and trace device is "a device or process … reasonably likely to identify the source … but **not the contents** of a communication." Cal. Penal Code. § 638.50(c) (emphasis added). Plaintiff's entire theory, however, is that the analytics software captures the "full page URLs" of each webpage allegedly visited by Plaintiff on the Dove website. Compl. ¶ 11. The analytics services know *exactly* what she looked at on Dove's website. And again, a website is the ***only* content** of a "communication" that *could* exist under these allegations, and according to Plaintiff, these services are not only "reasonably likely" to identify what webpages a website visitor views, the software exists for no other purpose. That cannot be a trap and trace device as a matter of law. *See, e.g.*, *Royal Caribbean*, 2025 WL 1745726, at *4 (holding that alleged "trap-and-trace" software necessarily must collect content under

---

[25]    The Internet would not work unless IP addresses and other "signaling information" are exchanged automatically between an individual visitor and the destination website. Plaintiff's Complaint concedes this point.

plaintiff's allegations, meaning it could not be such a device as a matter of law) (citing *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025)).

Plaintiff alleges that these third-party software providers learn every URL and webpage she visited on the Dove website, which would necessarily be "reasonably likely to identify" the only possible "communication" here—the website itself. The software therefore cannot be a trap-and-trace device. As Judge Wise held, amendment would be futile, and dismissal with prejudice is warranted on this ground alone.

## VIII.  **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice, as any amendment would be futile.

Respectfully submitted,

Dated: October 20, 2025        **ARENTFOX SCHIFF LLP**

By:/s/ Lynn R. Fiorentino
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Unilever United States, Inc.

## <u>LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Unilever United States, Inc. certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

Dated: October 20, 2025                **ARENTFOX SCHIFF LLP**

By: /s/ Lynn R. Fiorentino
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Unilever United States, Inc.