# EXHIBIT D

**FILED**
Superior Court of California
County of Los Angeles

**NOV 19 2025**

David W. Slayton, Executive Officer/Clerk of Court

By: N. Navarro, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DERMALOGICA, LLC, a California company d/b/a WWW.DERMALOGICA.COM,<br><br>Defendant. | Case No.: 25STCV03446<br><br>ORDER RE DEMURRER<br><br>Date:   November 19, 2025<br>Time:   9:00 a.m.<br>Dept.:  SSC 17 |

Exhibit D ISO Decl. of S. Boniadi

1    Defendant Dermalogica, LLC demurs to Plaintiff Silvia Garcia's First Amended

2  Complaint. The FAC alleges Defendant violated Penal Code section 538.51 by install a TikTok

3  tracking pixel that operated as a trap and trace device. (FAC, ¶¶ 6, 18.) Defendant argues, among

4  other things in its demurrer, that the TikTok pixel is not a trap and trace device.

5    Penal Code section 538.50, subdivision (c) defines a "trap and trace device" as "a device or

6  process that captures the incoming electronic or other impulses that identify the originating

7  number or other dialing, routing, addressing, or signaling information reasonably likely to identify

8  the source of a wire or electronic communication, but not the contents of a communication." The

9  FAC alleges in very broad and vague terms much more than the capturing of an impulse

10  identifying the source of a communication.

11    For example, the FAC alleges that when Plaintiff went on Defendant's website, the TikTok

12  pixel allowed the Chinese government to "use TikTok to spy on visitors on the Website, track their

13  journey across the web, eavesdrop on their conversations, and bombard them with targeted

14  advertising" and Defendant "helped TikTok track and eavesdrop on Plaintiff's personal life."

15  (FAC at p. 2.) Those assertions allege that the pixel captured contents of communications and

16  information about website users' lives, not signaling information. The FAC alleges further that the

17  TikTok pixel "collects as much data as it can" about website visitors, it "tracks user actions,

18  behavior, and conversions," it "pick[s] off usernames and passwords, credit card and banking

19  information and details about users' personal health," it collects "names, passwords and

20  authentication codes," and it tracks "when a user views the page" and "page interactions." (FAC,

21  ¶¶ 6, 8, 9, 16.) These allegations are not about dialing, routing, address, or signaling information

22  identifying a source; rather they contend the pixel obtains the substance of the communications

23  between users and a website.

24    Regarding Plaintiff, the FAC alleges merely that the TikTok pixel, "was collecting

25  Plaintiff's data, as described above." (FAC, ¶ 12.) This is vague and includes types of

26  information not encompassed by section 538.50, subdivision (c).

27    Then the FAC alleges "the TikTok Software is solely to identify the source of the incoming

28  electronic and wire communications to the Website." (FAC, ¶ 41.) This sentence seems to be

- 2 -

Exhibit D ISO Decl. of S. Boniadi

missing a word and contradicts the sweeping allegations earlier in the FAC that the pixel eavesdrops on conversations, collects bank account and health information, and tracks a user's interactions with a website.

Not only does the FAC contradict itself about the type of information it collects, it is vague about the type of information contained in the "incoming electronic and wire communications impulses" from Plaintiff that identified Plaintiff as the source of information but did not include the contents of communications between Plaintiff and Defendant's website. Because Plaintiff alleges a statutory violation, she needs to plead the claim with specificity.

Because the FAC both says too much for a cause of action under section 638.51 (e.g., alleging the pixel eavesdropped on conversations) and says too little (e.g., not alleging the specific dialing, routing, addressing, or signaling information that identified Plaintiff as the source of an electronic communication), the court SUSTAINS the demurrer with 30 days' leave to amend, by December 19, 2025. A Non-Appearance Case Review is set for January 2, 2026, at 8:30 a.m. in Department 17.

Dated:    11/19/2025

_Laura Seigle_

LAURA A. SEIGLE
JUDGE OF THE SUPERIOR COURT

### DEPARTMENT 51 - LAW AND MOTION RULINGS

1. If you wish to submit on the tentative ruling, please email the clerk at SMCdept51@lacourt.org (and "cc" all other parties in the same email) and notify all other parties in advance that you will not be appearing at the hearing.  Include the word "SUBMISSION" in all caps in the subject line and include your name, contact information, the case number, and the party you represent in the body of the email. If you do not have access to the internet, you may call the clerk at (213) 633-0351.

If you submit on the tentative and elect not to appear at the hearing, the opposing party may nevertheless appear and argue the motion, and the Court may decide not to adopt the tentative ruling. Please note that the tentative ruling is not an invitation, nor an opportunity, to file any further documents relative to the hearing in question which are not authorized by statute or Rule of Court.

2. For any motion where no parties submit to the tentative ruling in advance, and no parties appear at the motion hearing, the Court may elect to either adopt the tentative ruling or take the motion off calendar, in its discretion.

3. DO NOT USE THE ABOVE EMAIL FOR ANY PURPOSE OTHER THAN TO SUBMIT TO A TENTATIVE RULING.  The Court will not read or respond to emails sent to this address for any other purpose.

---

**Case Number: 24STCV29634   Hearing Date:** August 1, 2025    **Dept:** 51

## ~~Tentative~~ Ruling

**FILED**
Superior Court of California
County of Los Angeles

AUG 01 2025

David W. Slayton, Executive Officer/Clerk of Court
By: C. Crow, Deputy

Judge Upinder S. Kalra, Department 51

**HEARING DATE:**   August 1, 2025

**CASE NAME:**   Anne Heiting v. HP Inc.

**CASE NO.:**    24STCV29634

### DEMURRER

**MOVING PARTY:**  Defendant HP Inc.

**RESPONDING PARTY(S):** Plaintiff Anne Heiting

**REQUESTED RELIEF:**

Demurrer to the entire Complaint for failing to state sufficient facts to constitute a cause of action.

**~~TENTATIVE~~ ~~RULING~~:**

Demurrer to the Complaint is SUSTAINED without leave to amend.

**STATEMENT OF MATERIAL FACTS AND/OR PROCEEDINGS:**

On November 12, 2024, Plaintiff Anne Heiting (Plaintiff) filed a Complaint against Defendant HP Inc. (Defendant) with one cause of action for violation of Cal. Penal Code § 638.51 (CIPA). Plaintiff alleges that Defendant installed

software on their website which de-anonymized Plaintiff without her consent.

On January 13, 2025, Defendant filed the instant demurrer. On February 4, 2025, Plaintiff filed an opposition. On February 10, 2025, Defendant filed a reply.

On March 12, 2025, the court ruled on a CCP § 170.6 challenge, took the demurrer off calendar, and reassigned it to Dept. 51. On June 30, 2025, the court reset the hearing on Defendant's demurrer to August 1, 2025.

## LEGAL STANDARD:

### Demurrer

A demurrer for sufficiency tests whether the complaint states a cause of action.¿(*Hahn v. Mirda¿*(2007) 147 Cal.App.4th 740, 747.) When considering demurrers, courts read the allegations liberally and in context.¿In a demurrer proceeding, the defects must be apparent on the face of the pleading or via proper judicial notice. ¿(*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.)¿"A demurrer tests the pleadings alone and not the evidence or other extrinsic matters. …. The only issue involved in a demurrer hearing is whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action."¿(*Hahn¿*147 Cal.App.4th at 747.)¿¿¿

### Meet and Confer

Prior to filing a demurrer, the demurring party is required to satisfy their meet and confer obligations pursuant to Code of Civ. Proc. §430.41, and demonstrate that they so satisfied their meet and confer obligation by submitting a declaration pursuant to Code of Civ. Proc. §430.41(a)(2) & (3). ¿The meet and confer requirement also applies to motions to strike. (CCP § 435.5.) Here, meet and confer requirement is met. (Sweeney Decl. ¶ 5.)

### Request for Judicial Notice

The court DENIES the parties' requests for judicial notice.[1] The court may decline to take judicial notice of materials not "necessary, helpful or relevant." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.) What is more, California Rule of Court, rule 8.115(b), prohibits citing or relying on unpublished decisions except for reasons not applicable here. "A written trial court ruling in another case has no precedential value." (*Budrow v. Dave & Buster's of California* (2009) 171 Cal.App.4th 875, 885; *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; *In re Molz* (2015) 127 Cal.App.4th 836, 845; *Santa Ana Medical Hospital Center v. Belshé* (1997) 56 Cal.App.4th 819, 831.)

## ANALYSIS:

Defendant contends that Plaintiff's claim fails for several reasons: (1) she lacks standing because she did not allege a concrete injury; (2) Plaintiff failed to allege the Software is a trap and trace device; (3) Plaintiff failed to plead facts to bypass the "operate a website" exception; and (4) Plaintiff failed to plead facts to bypass the consent exception. Plaintiff argues that she has standing, CIPA's language broadly applies to cover the Software, she sufficiently plead the information collected is not needed to operate the Website, and lack of consent. Defendant replies that Plaintiff still failed to plead actual injury, CIPA still does not apply, and Plaintiff did not plead around the two exceptions addressed.

Page 39
Exhibit D ISO Decl. of S. Boniadi

This action is one of many before this Court and other California trial courts in which plaintiffs allege that software used by websites to handle the communications when a user logs on to the website are either a "pen register" or "trap and trace device." Both types of instrumentalities are prohibited under CIPA. Plaintiffs argue that the software constitutes a "pen register" or "trap and trace device" because this software identifies information about the users when the users contact the website. Sometimes the information identified by the software is simply the IP address of the user. Sometimes, as here, Plaintiff alleges it includes other information.

A person who has been injured by a violation of CIPA may bring an action against the violator for the greater of $5,000.00 or three times the amount of actual damages, if any, sustained by the plaintiff. (Pen. Code, § 637.2, subd. (a).) "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, § 637.2, subd. (c).)

"Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, § 638.51, subd. (a).) Subdivision (b) permits the use of such a device if, among other things, the consent of the user has been obtained. (Pen. Code, § 638.51, subd. (b).)

" 'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business." (Pen. Code, § 638.50, subd. (b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50, subd. (c).)

Here, Plaintiff failed to allege facts that Defendant's website contains a track and trace device. According to the Complaint, Defendant "partnered with TikTok to install sophisticated software on its landing page to learn the

Page 40

Exhibit D ISO Decl. of S. Boniadi

3/6

location, source, and identity of consumers [including Plaintiff] who happen to land on their website." (Compl. ¶ 1.) Plaintiff further alleges that she visited Defendant's website on March 4, 2024 where Defendant "deployed a de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device." (Compl. ¶ 2.) The TikTok Software allegedly "gathers device and browser information, geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website to send user details to TikTok." (Compl. ¶ 13.) The "software is solely to identify the source of the incoming electronic and wire communications to the Website." (Compl. ¶ 28.) Plaintiff makes no allegation, however, that Defendant's website puts any sort of wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff. As a result, the court concludes that the software at issue is not a trap and trace device.

As noted above, the definition of a trap and trace device reads as follows: " 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50, subd. (c).) This statute is part of a chapter of the California Penal Code dealing with wiretapping, eavesdropping, intercepting cell phone communications, installing a tracking device, and buying or selling calling pattern records. (See Pen. Code §§ 630-638.) The chapter begins with the following legislative declaration: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (Pen. Code § 630.)

Thus, the wiretapping statute prohibits individuals from using a wiretap from learning the contents of a target's communications. (Pen. Code § 631.) The pen register statute prohibits the use of a device or process that does not discover the contents of the communications, but only transmission information about those communications—for example, the phone numbers called by the target. (Pen. Code § 638.50, subd. (b).) The trap and trace statute prohibits the use of a device or process that does not discover the content of communications, but only the incoming information about those communications—for example, the phone numbers of calls made to the target. (Pen. Code § 638.50, subd (c).)

By its terms, the trap and trace device statute applies only to "incoming" electrical information. The language, with emphases added, reads: "the *incoming* electronic or other impulses that *identify the originating number* or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication. . . " (Pen. Code, § 638.50, subd. (c).) This statutory language describes that the device must track incoming data that identifies who is contacting the target. The statute prohibits receiving unauthorized information about incoming communications from other parties—not information that passes between plaintiff and defendant when plaintiff

contacts the defendant.

CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any "originating number," then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner

that allows the website to function. There is no indication that, in enacting the trap and trace

device prohibition, the California Legislature meant to cover such devices.[2]

For all these reasons, the court concludes that the allegations do not describe a trap and trace

device under CIPA. The court declines to address the other three arguments.

**Accordingly, the court SUSTAINS Defendant's demurrer without leave to amend.**[3]

**CONCLUSION:**

For the foregoing reasons, the Court decides the pending motion as follows:

Demurrer to the Complaint is SUSTAINED without leave to amend.

Moving party is to give notice.

IT IS SO ORDERED.

UPINDER S. KALRA

Dated:            August 1, 2025            _____

Upinder S. Kalra

Judge of the Superior Court

---

[1] The court declines to rule on Plaintiff's evidentiary objections.

[2] The court would note that Penal Code section 638.51 is contained within a Chapter titled: "Interception of wire, electronic digital pager or electronic cellular *Telephone Communications." (Emphasis added.)* Although telephone communications has evolved through technology, the court questions how the accessing a website in the manner alleged in the FAC is akin to telephone communication.

[3] Leave to amend should be liberally granted if there is a reasonable possibility an amendment could cure the defect.¿ (*County of Santa Clara v. Superior Court* (2022) 77 Cal.App.5th 1018,1035.)¿ The Plaintiff has the burden of demonstrating that leave to amend should be granted, and that the defects can be cured by amendment. ("Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Here, Plaintiff requests leave to amend in their final sentence of their opposition. (Opp. 10:20-21.) However, Plaintiff did not articulate what facts they could allege to cure this legal defect. In conjunction with the above analysis, this weighs against granting leave to amend.

E-Served: Nov 12 2025 11:02AM PST Via Case Anywhere

*Superior Court of California*

*County of Los Angeles*

*Spring Street Courthouse, Department 9*

| | |
|---|---|
| RUTH MARTIN, individually and on behalf of all others similarly situated<br><br>                    Plaintiff,<br><br>          vs.<br><br>CONOPCO, INC., a Delaware corporation, d/b/a, WWW.BREYERS.COM,<br><br>                    Defendant. | Case No.:  24STCV30397<br><br>Hearing Date:  November 12, 2025<br><br>**[TENTATIVE] ORDER RE:**<br><br>**DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT** |

*Procedural Background*

This is a consumer putative class action.  Plaintiff Ruth Martin ("Plaintiff") alleges that Defendant Conopco, Inc. dba www.breyers.com ("Defendant") – which operates the website www.breyers.com – installed a software created by TikTok to identify Plaintiff and the putative class members in a way that violates California's Trap and Trace laws.

On November 18, 2024, Plaintiff filed the putative class action.  On March 13, 2025, Plaintiff filed the operative First Amended Complaint ("FAC") asserting a single claim for violation of Penal Code section 638.51.

1

On July 24, 2025, Defendant filed the instant demurrer to the FAC.  On October 29, 2025, Plaintiff filed an opposition.  On November 4, 2025, Defendant filed a reply.

***Allegations of the Operative Complaint***

The FAC alleges that:

Defendant created its website – www.breyers.com – "to obtain information from and about Defendant's goods and services, and to enable Defendant to elicit information from potential customers about their specific needs and desires."  (FAC ¶ 2.)  Defendant assured visitors of its website, with its privacy notice, that it strives to secure personal information and reduce the risk of misuse.  (FAC ¶ 3.)  However, Defendant aids a third party named ByteDance (the owner and controller of TikTok) in surveying Defendant's interactions with website visitors.  (FAC ¶ 4.)  The software Defendant installed onto their website sends user details to TikTok including, "device and browser information, geographic information, referral tracking, and url tracking."  (FAC ¶¶ 13-15.)  It also "transmits other identifying information, including a website visitor's phone numbers and email addresses."  (FAC ¶ 17.)  Moreover, it "immediately links to data harvesting platforms that pick off usernames and passwords, credit card and banking information and details about users' personal health." (*Id.* ¶ 18.)  The pixel also collects 'names, passwords and authentication codes.'"  (FAC ¶ 17.)  The TikTok Software does all of this before it seeks the visitor's consent.  (FAC ¶ 16.)

Plaintiff is a resident and citizen of California.  (FAC ¶ 11.)  Plaintiff visited Defendant's website in 2024, during which, electric impulses from Plaintiff's device identified and tracked her.  (FAC ¶ 7.)  Plaintiff is "genuinely interested in the goods, services, and information available on Defendant's Website" and is also a "tester" of websites to ensure they are complying with California privacy law.  (FAC ¶ 20.)

The California Legislature desires to cover secret surveillance under the California Invasion of Privacy Act ("CIPA").  (FAC ¶ 6.)  The software employed on Defendant's website is a "trap and trace device" or "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  (FAC ¶ 23.)  California's Trap and Trace Law is part of CIPA.  (FAC ¶ 36.)  "[A] person may not install or use…a trap and trace device without first obtaining a court order…"  (FAC ¶ 39.)  There was no court order for Defendant to install a trap and trace device.  (FAC ¶ 39.)

***Untimely Opposition***

"***Unless otherwise ordered*** or specifically provided by law … All papers opposing a motion so noticed shall be filed with the court and a copy served on each party at least nine court days, and all reply papers at least five court days before the hearing."  (CCP § 1005(b) [bold and italics added].)  This is calculated by counting backwards from the hearing date and excluding holidays and weekends.  (CCP §§ 12-12(c).)  The court may refuse to consider a late-filed paper. (Cal. Rules of Court, Rule 3.1300(d).)

Here, the Court set a briefing schedule under which any opposition was due by October 23, 2025, and any reply was due by October 29, 2025.  Defendant included this court ordered briefing schedule in the notice of motion.  (Notice at p.2:7-10 ["Pursuant to the filing date of July 24, 2025, and the hearing date of November 12, 2025, the briefing scheduled is as follows: Plaintiff's Opposition to the Demurrer must be filed on or before October 23, 2025. Conopco's Reply in support of the Demurrer must be filed on or before October 29, 2025."].)  However, Plaintiff did not file the opposition until October 29, 2025 – when the reply was due.  Thus, the

opposition is untimely.  However, the Court – in its discretion – will consider the untimely

filings.  Any future untimely filings by any party may be disregarded or stricken.

***Request for Judicial Notice***

In conjunction with the moving papers, Defendant requests that the Court take judicial

notice of the following:

A.  2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (June 16, 2015).
B.  2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (July 8, 2015).

In conjunction with the opposition, Plaintiff requests that the Court take judicial notice

of the following:

1.  A report of the 2015 California Senate Rules Committee regarding Assembly Bill 929
2.  A report of the 2025 California Senate Committee on Public Safety regarding Senate Bill 690

In conjunction with the reply, Defendant requests that the Court take judicial notice of

the following:

A.  The August 1, 2025 Order in *Heiting v. HP Inc.*, 24STCV29634 (L.A. Sup. Aug. 1, 2025)

As the Court may take judicial notice of court records and actions of the State, (See

Evid. Code, § 452(c)(d)), Defendant's request for judicial notice is **GRANTED**.  However, the

Court does not take judicial notice of the truth of assertions within the court records.  (See

*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)

4

***Legal Standard***

A demurrer can be used only to challenge defects that appear on the face of the pleading under attack; or from matters outside the pleading that are judicially noticeable. (*Blank v. Kirwan* (1985) 39 Cal 3d 311, 318.) No other extrinsic evidence can be considered (i.e., no "speaking demurrers"). (*Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 881.)

A demurrer for sufficiency tests whether the complaint states a cause of action. (*Hahn v. Mirda* (2007) 147 Cal. App. 4th 740, 747.)  When considering demurrers, courts "give the complaint a reasonable interpretation, and read it in context."  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  In a demurrer proceeding, the defects must be apparent on the face of the pleading or via proper judicial notice.  (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal. App. 4th 968, 994.)  "A demurrer tests the pleadings alone and not the evidence or other extrinsic matters.  Therefore, it lies only where the defects appear on the face of the pleading or are judicially noticed."  (*SKF Farms v. Superior Ct.* (1984) 153 Cal. App. 3d 902, 905.)  "The only issue involved in a demurrer hearing is whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action."  (*Hahn*, *supra*, 147 Cal.App.4th at 747.)

***Meet and Confer Requirement***

Code of Civil Procedure § 430.41, subdivision (a) requires that "[b]efore filing a demurrer pursuant to this chapter, the demurring party shall meet and confer in person or by telephone with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer." The parties are to meet and confer at least five days before the date the responsive pleading is due and if they are unable to meet the demurring party shall be granted an automatic 30-day extension.  (CCP § 430.41(a)(2).)  The demurring party must also file and

serve a declaration detailing the meet and confer efforts.  (*Id*. at (a)(3).)  If an amended pleading is filed, the parties must meet and confer again before a demurrer may be filed to the amended pleading.  (*Id*. at (a).)

Defendant has fulfilled the meet and confer requirement.  (Fiorentino Decl. ¶¶ 3-4.)

***Discussion***

Defendant contends that that Plaintiff's single claim for violation of Penal Code section 638.51 – a part of the California Invasion of Privacy Act ("CIPA") – fails because (1) this section only covers communications in transit that are intercepted by third-parties, (2) pen register and trap and trace devices are limited to telephones, (3) Plaintiff alleges facts indicating that TikTok obtains the contents of communications, (4) allowing Plaintiff's complaint to proceed creates an untenable conflict with the California Consumer Privacy Act, and (5) Plaintiff lacks standing.

Penal Code § 638.51

Penal Code section 638.51 prohibits a person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order[.]"  (Pen. Code, § 638.51(a).)  Penal Code section 638.51(b) provides numerous exemptions for the use of pen register or trap and trace device by a provider of electronic or wire communication service to operate, maintain, and test a wire or an electronic communication service, or if consent of the user has been obtained.  (Pen. Code, § 638.51(b)(1),(5).)

" 'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or

6

electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business."  (Pen. Code, § 638.50(b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  (Pen. Code, § 638.50(c).)

"Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff."  (Pen. Code, § 637.2(a).)  "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, § 637.2(c).)

Plaintiff Fails to Allege that the TikTok Software is a Trap and Trace Device

Historically, courts recognized that "[a] pen register is a mechanical device which records the numbers dialed from a telephone[.]"  (*People v. Blair* (1979) 25 Cal.3d 640, 654, Fn. 11.) Further, as explained in the legislative history for CIPA, "[o]ne of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular *telephone line*. In addition, another tool law enforcement uses is called a 'trap and trace device; which allows them to record what numbers have called a specific *telephone line*, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a *cellular telephone*.  (Defendant's Request for Judicial Notice "RJN", Exh. A [2015

California Assembly Bill No. 929, California 2015-2016 Regular Session (June 16, 2015)] [italics added].)  Thus, the legislative history of the CIPA suggests that "pen register" and "trap and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from *telephone numbers*, not internet communications such as websites.  This legislative history suggests that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software that a website uses to improve its user functionality and the effectiveness of its marketing.

In any event, the Court need not decide whether or not CIPA's "trap and device" statute can apply to software installed on websites because even if it can, Plaintiff has not alleged that Defendant installed or used a "trap and trace device."  In relevant part, Plaintiff alleges that Defendant operates breyers.com and installed a software created by TikTok (the "TikTok Software") on its Website.  (FAC ¶¶ 2, 13.)  Plaintiff conclusorily alleges that the TikTok Software is a trap and trace device.  (FAC ¶¶ 23-25.)  However, the factual allegations concerning the TikTok Software are as follows: "[t]he TikTok Software acts via a process known as 'fingerprinting.' Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans."  (FAC ¶ 14.)  "The TikTok Software gathers device and browser information, geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website to send user details to TikTok."  (FAC ¶ 15.)  "The TikTok Software begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent." (FAC ¶ 16.)  "The TikTok Software also requests, validates, and transmits other identifying information, including a website visitor's phone numbers and email addresses." (FAC ¶ 17.)  "The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing,

addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information." (FAC ¶ 24.) "Plaintiff visited Defendant's Website in . . . 2024. . . . Defendant secretly deployed a de-anonymization process to identify and track Plaintiff using electronic impulses generated from Plaintiff's device." (FAC ¶ 7.)

Thus, Plaintiff at most alleges that Defendant's Website collects the IP addresses and other information of visitors incoming to *Defendant's* website - the equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device. Plaintiff makes no allegation that Defendant's website puts any sort of device or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff, i.e., incoming electronic or other impulses to Plaintiff. As a result, the Court concludes that the software at issue is not a trap and trace device.

As noted above, the statute defines a trap and trace device as follows: " '[t]rap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50(c).) This statute is part of a chapter of the California Penal Code dealing with wiretapping, eavesdropping, intercepting cell phone communications, installing a tracking device, and buying or selling calling pattern records. (See Pen. Code §§ 630-638.) The chapter begins with the following legislative declaration: "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (Pen. Code § 630.)

1    Thus, the wiretapping statute prohibits individuals from using a wiretap from learning

2    the contents of a target's communications.  (Pen. Code § 631.)  The pen register statute prohibits

3    the use of a device or process that does not discover the contents of the communications, but

4    only transmission information about those communications – for example, the phone numbers

5    called by the target.  (Pen. Code § 638.50(b).)  The trap and trace statute prohibits the use of a

6    device or process that does not discover the content of communications, but only the incoming

7    information about those communications – for example, the phone numbers of calls made to the

8    target.  (Pen. Code § 638.50(c).)

9    By its terms, the trap and trace device statute applies only to "incoming" electrical

10    information.  The language reads: "the incoming electronic or other impulses that identify the

11    originating number or other dialing, routing, addressing, or signaling information reasonably

12    likely to identify the source of a wire or electronic communication…"  (Pen. Code, § 638.50(c).)

13    This statutory language describes that the device must track incoming data that identifies who is

14    contacting the target.  The statute prohibits receiving unauthorized information about incoming

15    communications from other parties – not information that passes between Plaintiff and

16    Defendant when Plaintiff contacts Defendant.

17    CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it.  Plaintiff's

18    reading goes far afield from any concept of wiretapping.  If CIPA broadly prohibits any process

19    by which anyone identifies any "originating number," then every cell phone in the world – which

20    identify the phone number of incoming calls – would be a prohibited trap and trace device.  So

21    would every website interaction that identifies electronic information about the user in a manner

22    that allows the website to function.  There is no indication that, in enacting the trap and trace

23    device prohibition, the California Legislature meant to cover such devices.

24    Plaintiff fails to allege a violation of Penal Code section 638.51 for a separate and

25    independent reason.  As noted above, a " '[t]rap and trace device' means a device or process that

10

1    captures the incoming electronic or other impulses that identify the originating number or other

2    dialing, routing, addressing, or signaling information reasonably likely to identify the source of a

3    wire or electronic communication, *but not the contents of a communication*." (Pen. Code, §

4    638.50(c) [italics added].) Accordingly, "trap and trace devices" by definition are tools which

5    provide information about the "who," "when," and "where" of communications—but not the

6    "what."

7            Though Plaintiff alleges that the TikTok Software on Defendant's website "is 'reasonably

8    likely' to identify the source of incoming electronic impulses[,]" (FAC ¶ 25), Plaintiff further

9    alleges that the TikTok Software does much more. "The TikTok Software gathers device and

10    browser information, geographic information, referral tracking, and url tracking by running code

11    or 'scripts' on the Website to send user details to TikTok." (FAC ¶ 15.) "The TikTok Software

12    also requests, validates, and transmits other identifying information, including a website visitor's

13    phone numbers and email addresses." (FAC ¶ 17.) The information captured by the TikTok

14    Software is not limited to the originating number or other dialing, routing, addressing, or

15    signaling information. Instead, the complaint appears to allege that the TikTok software captures

16    substantive information in the communications themselves. For example, Plaintiff alleges that

17    Defendant's website "instantly sends communications to TikTok when a user views the page and

18    *tracks page interactions*." (FAC ¶ 22.) The FAC concedes that the TikTok software is not only

19    tracking who, when, and where the users accessed Defendant's website but by tracking the page

20    interactions, the TikTok Software is also capturing the substantive portion of users' interactions

21    with Defendant's website – i.e., the contents of communications. This is not a "trap and trace

22    device" covered by section 638.51.

23            Accordingly, Defendant's demurrer to the FAC is **SUSTAINED** on the ground that

24    Plaintiff has failed to allege a violation of Penal Code section 638.51.

25

Plaintiff Lacks Standing to Assert a Violation of Penal Code Section 638.51

Code of Civil Procedure § 367 provides that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (CCP § 367.) "Only the real party in interest has 'an actual and substantial interest in the subject matter of the action,' and stands to be 'benefited or injured' by a judgment in the action." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 60.) Thus, "[a] real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law." (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605.)

"In assessing standing, California courts are not bound by the 'case or controversy' requirement of article III of the United States Constitution, but instead are guided by 'prudential' considerations. [Citation.] 'One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' [Citations.] 'The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]' [Citation.] 'California decisions ... generally require a plaintiff to have a personal interest in the litigation's outcome.' " (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370.)

Penal Code section 637.2(a) provides in relevant part: "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." (Pen. Code, § 637.2(a).)  "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, § 637.2(c).)

1    Though it involves a different statute, *Limon v. Circle K Stores Inc.* (2022) 84

2  Cal.App.5th 671 is instructive.  In *Limon*, the plaintiff, Ernesto Limon, alleged that his

3  employer "Circle K violated the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.)

4  by failing to provide him with proper FCRA disclosures when it sought and received his

5  authorization to obtain a consumer report about him in connection with his application for

6  employment, and by actually obtaining the consumer report in reliance on that authorization."

7  (*Limon, supra,* 84 Cal.App.5th  at p.680, Fn. Omitted.)  Limon initially filed a putative class

8  action suit against Circle K in the United States District Court for the Eastern District of

9  California.  (*Id*. at p.684.)  In Limon's initial federal action, the district court granted Circle K's

10  motion on the ground that Limon failed to establish Article III standing.  (*Id*. at p.684.)

11    Limon then filed a putative class action suit against Circle K in state court.  (*Ibid*.)  In

12  the state court proceedings, Circle K filed a demurrer to Limon's complaint on the grounds that

13  Limon lacked standing.  (*Id*. at p.685.)  The trial court sustained the demurrer without leave, and

14  the Court of Appeal affirmed.  (*Ibid*.)  The Court of Appeal reiterated the general standard that

15  "California courts are not bound by the 'case or controversy' requirement of article III of the

16  United States Constitution[.]"  (*Id*. at p.690.)  However, the Court of Appeal concluded that "as

17  a general matter, to have standing to pursue a claim for damages in the courts of California, a

18  plaintiff must be beneficially interested in the claims he is pursuing."  (*Id*. at p.700.)  Turning to

19  the facts of the case, the Court of Appeal in *Limon* found that Limon "ha[d] not alleged a

20  concrete or particularized injury to his privacy interests sufficient to afford him an interest in

21  pursuing his claims vigorously."  (*Id*. at p.706.)  There was no allegation that Limon did not

22  receive a copy of the consumer report that Circle K obtained or that the consumer report

23  contained any defamatory content.  (*Id*. at p.705.)  "Similarly, there [we]re no allegations of any

24  exposure to a material risk of future harm, imminent or substantial."  (*Ibid*.)  Thus, the Court of

25  Appeal concluded that "there was no injury to Limon's protected interest in ensuring fair and

accurate credit (or background) reporting … [nor any] injury associated with any adverse employment decision based on false or inaccurate reporting." (*Ibid*.)  Nor did Limon's allegations suggest any harm from the release that Limon signed.  (*Ibid*.)  The Court of Appeal also found that the disclosures on Circle K's consent form appeared to comply with the FCRA, and Limon admitted that he authorized Circle K to run a background check on him.  (*Ibid*.)

Though Limon alleged an informational injury, Limon "failed to allege any concrete injury in connection with his claim of informational injury."  (*Id.* at p.707.)  "[U]nder California law, ... an informational injury that causes no adverse effect is insufficient to confer standing upon a private litigant to sue under the FCRA."  (*Ibid.*)  "Thus, his alleged informational injury is insufficient under California law to confer upon him standing to pursue his claim in state court."  (*Ibid.*)  The Court of Appeal in Limon also held that Limon lacked "public interest" standing.  (*Limon, supra,* 84 Cal.App.5th at p.703 ["We discern no basis upon which to conclude the FCRA was intended to confer public interest standing upon a private litigant."].)

Here, Penal Code section 637.2(a) provides that "[a]ny person who has been *injured by a violation* of [section 638.51] may bring an action against the person who committed the violation for the greater of the following amounts:" including the greater of two alternative remedies "(1) Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff."  (Pen. Code, § 637.2(a) [italics added].)  This civil enforcement statute also provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."  (Pen. Code, § 637.2(c).)  Thus, although CIPA does not require that Plaintiff suffer actual damages to have standing to bring a civil action, CIPA does require that Plaintiff suffer an injury caused by the alleged violation.  Here, Plaintiff fails to assert any injury caused by the section 638.51 violation.

14

Though section 638.51 criminalizes both the installation and use of "pen registers" and "trap and trace devices" without a court order, Plaintiff could not suffer an injury due to the mere act of installing a "pen register" or "trap and trace device" on Defendant's website. Thus, the only basis that Plaintiff can allege that she was harmed is through Defendant's *use* of the alleged "trap and trace device."

Plaintiff alleges that she went to Defendant's website as someone who is "both (1) genuinely interested in the goods, services, and information available on Defendant's Website, and (2) a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." (FAC ¶ 20.) Further, Plaintiff went to Defendant's website at some point in late 2024. (FAC ¶ 7.) Notably, there is no allegation that Defendant used the TikTok Software when Plaintiff visited Defendant's website.

Moreover, even presuming that Defendant used the TikTok Software when Plaintiff visited Defendant's website, there is no allegation as to what information belonging to Plaintiff that was captured by the TikTok Software on Defendant's website or how this resulted in any injury to Plaintiff. To the extent that Plaintiff has alleged the TikTok Software captured IP addresses, such information has cannot give rise to a privacy injury as a matter of law. (See e.g., *People v. Stipo* (2011) 195 Cal.App.4th 664, 669 ["e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."].) Thus, it is unclear what injury – if any – Plaintiff suffered due to Defendant's use of the TikTok Software.

Accordingly, Defendant's demurrer to the FAC is **SUSTAINED** on this additional

1  ground. [1]

2

3  ***Leave to Amend***

4   Leave to amend must be allowed where there is a reasonable possibility of successful

5  amendment. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348.) The burden is on the plaintiff to

6  show the court that a pleading can be amended successfully. (*Goodman v. Kennedy, supra*, 18

7  Cal.3d at p.348; *Lewis v. YouTube, LLC* (2015) 244 Cal.App.4th 118, 226.)

8   Though it is unclear whether Plaintiff can successfully amend the complaint, as this is

9  the first time that a complaint has been sustained against Plaintiff's complaint, the Court finds it

10  is proper to allow Plaintiff an opportunity to cure the defects discussed in this order. (See

11  *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Kong v. City of Hawaiian Gardens*

12  *Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1037.)

13

14

15

16  **CONCLUSION AND ORDER**

17   Based on the foregoing, Defendant Conopco, Inc. dba www.breyers.com's Demurrer to

18  the First Amended Complaint is **SUSTAINED WITH LEAVE TO AMEND**.

19   Plaintiff is to file and serve a Second Amended Complaint by no later than **December 12,**

20  **2025**.

21   Defendant is ordered to file and serve a responsive pleading **within 30 days** of service of

22  Plaintiff's Second Amended complaint.

23

24

25  [1] Because the Court finds that Plaintiff lacks standing, and Plaintiff has failed to allege that Defendant has not violated section 638.51 of CIPA, the Court declines to address Defendant's additional arguments raised in the demurrer.

Exhibit D ISO Decl. of S. Boniadi

The Defendant is ordered to download the instant **SIGNED** order from the Court's website and to give further and formal notice to all other parties and to file proof of service of such within (5) five days.

IT IS SO ORDERED.

DATED: November 12, 2025

_____
Elaine Lu
Judge of the Superior Court

17