LYNN R. FIORENTINO (SBN 226691)
lynn.fiorentino@afslaw.com
SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Defendant
UNILEVER UNITED STATES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA DAWKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-02378-SVW-DTB<br><br>**CLASS ACTION**<br><br>**DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: January 5, 2026<br>Time: 1:30 p.m.<br>Courtroom: 10A (10th Floor)<br>Judge: Stephen V. Wilson<br><br>Date Action Filed: September 10, 2025 |

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378-SVW-DTB          - 1 -

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 8

II.     PLAINTIFF'S CHARACTERIZATION OF AUTHORITY IS FREQUENTLY INDEFENSIBLE. ................................................... 9

III.    PLAINTIFF CONTINUES TO CONSPICUOUSLY FAIL TO IDENTIFY ANY CONCRETE HARM FROM VISITING A COMMERCIAL WEBSITE, AND DOING NOTHING MORE. ................ 12

IV.     PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER UNILEVER. .................................... 15

V.      TRAP AND TRACE DEVICES ARE EXPRESSLY LIMITED TO THIRD-PARTY INTERCEPTIONS AND ARE STRICTLY LIMITED TO TELEPHONE LINES ............................................................. 19

        A.      Parties To A "Communication" Are Categorically Exempt. ............... 20

        B.      Plaintiff Expressly Alleges Facts Indicating That Analytics Software Obtains the Content of Communications, and Therefore Cannot Be A Trap-and-Trace Device. ................................ 23

VI.     CONCLUSION ................................................................................ 24

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviles v. Liveramp, Inc.*,
  No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025).....................8

*Barclift v. Keystone Credit Services, LLC*,
  93 F.4th 136 (3d Cir. 2024)................................................................13

*Bittner v. United States*,
  598 U.S. 85 (2023)..........................................................................23

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025).................................................9, 16, 17

*Carroll v. J.M. Smucker Co.* .............................................................10

*Casillas v. BOP LLC*,
  No. 24STCV15581, 2025 WL 2161288 (Cal.Super. June 18, 2025)................13

*Casillas v. Transitions Optical, Inc.*,
  No. 23STCV30742, 2024 WL 4873370 (Cal.Super. Sep. 09, 2024)................12

*Conohan v. Gen Digital, Inc.*,
  No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655 (C.D. Cal. Feb.
  19, 2025)...................................................................................16

*Daghaly v. Bloomingdales.com, LLC*,
  No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024)............9, 10, 13

*Fernandez v. Seaboard Marine Ltd.*,
  135 F.4th 939 (11th Cir. 2025)...........................................................23

*Fregosa v. Mashable, Inc.*,
  No. 25-CV-01094-CRB, 2025 WL 1083214 (N.D. Cal. Apr. 10,
  2025).......................................................................................17

*Fujitsu–ICL Sys. Inc. v. Efmark Serv. Co.*,
  No. 00–CV–0777–W–(LSP), 2000 WL 1409760 (S.D.Cal. June
  29,2000)...................................................................................15

*Hancock v. Hitt*,
  No. C–98–960–MMC–(ARB), 1998 WL 345392 (N.D.Cal. June 9,
  1998) ................................................................................................................ 15

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024) ............................................................................ 18

*Heiting v. HP Inc.*,
  2025 WL 2993673 (Cal.Super. Aug. 01, 2025) ............................................ 8, 11

*Heiting v. Marriott Int'l, Inc.*,
  743 F. Supp. 3d 1163, 1171-72 (C.D. Cal. 2024) ........................... 10, 11, 16, 23

*Hughes v. Vivint, Inc.*,
  No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12,
  2024) ................................................................................................................ 14

*Hunstein v. Preferred Collection & Management Services, Inc.*,
  48 F.4th 1236 (11th Cir. 2022) (*en banc*)......................................................... 13

*Jacqueline B. v. Rawls Law Group, P.C.*,
  68 Cal.App.5th 243 (2021) ............................................................................... 18

*Jones v. Bloomingdales.com, LLC*,
  124 F.4th 535 (8th Cir. 2024) ..................................................................... 10, 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24,
  2025) ........................................................................................................... 11, 24

*Levings, Jr. v. Open Text Corp.*,
  No. 24STCV05440, 2024 WL 5672082 (Cal.Super. Sep. 03, 2024)................ 13

*Martin v. Conopco, Inc.*,
  Los Angeles Superior Court Case No. 24STCV30397 ................................ 13, 24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218, 1228 (9th Cir. 2011) ................................................................ 16

*Mitchener v. CuriosityStream, Inc.*,
  No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6,
  2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23,
  2025) ................................................................................................................ 14

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Moody v. Case-Mate, Inc.*,
   No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal.
   July 2, 2025) .................................................................................................. 16

*Nabozny v. Optio Solutions LLC*,
   84 F.4th 731 (7th Cir. 2023) ........................................................................ 13

*People v. Nakai*,
   183 Cal. App. 4th 499 (2010) ....................................................................... 10

*People v. Nakai*,
   183 Cal. App. 4th 499, 518 (2010) ............................................................... 10

*People v. Stipo*,
   195 Cal. App. 4th 664 (2011) ....................................................................... 12

*Perrin v. United States*,
   444 U.S. 37 (1979) ........................................................................................ 20

*Popa v. Microsoft Corp.*,
   153 F.4th 784 (9th Cir. Aug. 26, 2025) .................................................... 9, 13

*Premier Com. Corp. v. FMC Corp.*,
   139 F.R.D. 670 (N.D. Cal. 1991) .................................................................. 12

*Price v. Headspace, Inc.*,
   No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01,
   2025) .............................................................................................................. 24

*Pulsifer v. United States*,
   601 U.S. 124, 149 (2024) .............................................................................. 23

*Ribas v. Clark*
   (1985) 38 Cal.3d 355 ..................................................................................... 22

*Rodriguez v. Brushfire Recs.*,
   No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec.
   15, 2025) ........................................................................................................ 15

*Rosenthal v. Bloomingdales.com, LLC*,
   101 F.4th 90 (1st Cir. 2024) ......................................................................... 18

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378- SVW-DTB          5

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Sanchez v. Cars.com Inc.*,
   Case No. 24STCV13201 (Cal.Super. Jan. 27, 2025) ........................................ 19

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ............................................................................ 17

*Shields v. Professional Bureau of Collections of Maryland, Inc.*,
   55 F.4th 823 (10th Cir. 2022) ............................................................................ 13

*Speidel v. Markota*,
   2021 WL 3463895 (C.D. Cal. 2021) ............................................................ 17, 18

*United States v. Forrester*,
   512 F.3d 500, 509 (9th Cir. 2008) ................................................................ 12, 14

*Walden v. Fiore*,
   571 U.S. 277, 285 (2014) ................................................................................... 17

**Statutes**

18 U.S.C. § 2511(2)(d) .......................................................................................... 22

18 U.S.C. § 3121 ..................................................................................................... 8

18 U.S.C. § 3127 ..................................................................................................... 8

Cal. Penal Code § 629.51 ................................................................................. 19, 22

Cal. Penal Code § 631(a) ...................................................................................... 22

Cal. Penal Code § 632(a) ...................................................................................... 23

Cal. Penal Code § 638.50 ...................................................................... 8, 19, 20, 24

Cal. Penal Code § 638.51 ................................................................................*passim*

Cal. Penal Code § 638.52 ................................................................................. 20, 21

Cal. Penal Code § 638.53 ................................................................................. 20, 21

**Other Authorities**

CIPA .......................................................................................................... 10, 22, 23

Federal Wiretap Act................................................................................................ 22, 23

DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

1

Patriot Act ................................................................................................................ 22

U.S. Const. amend. IV ............................................................................................ 14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENTFOX SCHIFF LLP

Case No. 5:25-cv-02378- SVW-DTB          7          DEFENDANT UNILEVER INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

1

## I.    **INTRODUCTION**

Plaintiff's Opposition is founded on a fundamental bait-and-switch: that "first-party website analytics" to collect data on website visitors is perfectly fine, but when the same information is sent to third parties, that "is the kind of conduct section 638.51 forbids."  Opp. at 1-2 ("the gravamen here is Defendant's non-consensual sharing of Plaintiff's DRAS information with third parties").  But *sharing* data is not remotely what Section 638.51 addresses – at all.  It's the mere recording of the dialing information or the "capturing" of the "originating number" that creates a pen register or trap and trace device.[1]  Cal. Penal Code § 638.50(b)-(c).  And it is simply the "use" of such PR/TT devices – by *third parties* – that would otherwise trigger liability under Section 638.51, not the sharing of the data.  *See Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal.Super. Jan. 28, 2025) ("downstream use of data is not a part of the definitions of pen registers or trap and trace devices. It is the method of data collection itself that is at issue.").

Putting Plaintiff's misdirection to the side, the real question that Plaintiff conspicuously avoided answering is this: by copying verbatim the Federal Wiretap Act's definitions of PR/TT devices and otherwise tracking federal prohibitions on the use of such devices *under its one-party consent framework*,[2] did the California Legislature intend to criminalize the use of Caller ID and the operation of websites?  Of course not.  As multiple California state courts have recognized, Section 638.51 "prohibits receiving unauthorized information about incoming communications **from other parties** – ***not*** information that passes between Plaintiff and Defendant when Plaintiff contacts Defendant."  *See, e.g.*, *Heiting v. HP Inc*., 2025 WL 2993673, at *4 (Cal.Super. Aug. 01, 2025) (emphasis added).  In sum, the Dove website's alleged collection of routine metadata on its own website is not actionable as a matter

---

[1]    Provided, however, that such devices – referred to below as "PR/TTs" – do not also record the content of such communications.

[2]    *See* 18 U.S.C. §§ 3121, 3127.

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

of law.

But before returning to Plaintiff's misinterpretation of the statute, Unilever addresses below Plaintiff's understandable failure to distinguish the recent Ninth and Eighth Circuit *Bloomingdales.com* cases, or the more recent and equally fatal *Popa* decision, all of which hold that a plaintiff does not suffer ***any*** injury merely by routine data collection on a commercial website. For good reason, as the Courts of Appeals addressed the exact situation here: a plaintiff who "took [no] actions other than simply opening the webpage and then closing it" and who then complained her "information collected is transmitted to third parties."[3] That's *exactly* this case, and the Court should follow suit here.

Further, Plaintiff likewise does not dispute that the Dove website did not target her in any way, which is the real test for purposeful direction here, rather than where a vendor may have office space. On the contrary, the only targeting that occurred here was by Plaintiff, no different than if she called a New York resident and their Caller ID "captured" her California telephone. This case is therefore nothing like the Ninth Circuit's recent *Shopify* decision, as Unilever – a holding company that does not even operate anything – took no action to target Plaintiff, let alone with knowledge of her location.

## II.    PLAINTIFF'S CHARACTERIZATION OF AUTHORITY IS FREQUENTLY INDEFENSIBLE.

Before returning to the "merits" of Plaintiff's claim, and with respect to Plaintiff's counsel, it needs to be addressed that the Opposition is replete with purported "holdings" that cannot be supported by anything stated from the cited cases. Begin with the Eight Circuit's *Bloomingdales.com* decision, which Plaintiff asserts "hold[s] that consent cannot be inferred from mere website use or undisclosed

---

[3]    Mem. at 18 (citing *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024)).

tracking and cannot be resolved on the pleadings." Opp. at 2. But *Bloomingdales.com* does not address consent *at all*. Rather, fatally to Plaintiff here, the Eighth Circuit found the plaintiff's complaint that website operators "permitted others to record her electronic communications on the sites" did not result *in any injury*. *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024). Plaintiff also claims *Heiting* rejected a consent defense at the pleading stage. Opp. at 11. Yet as detailed previously and above, *Heiting* dismissed an indistinguishable case *with prejudice* because a website operator cannot be liable as a matter of law for collecting incoming data of its website visitors under the party exception – and thus HP, like Dove, didn't need *any* consent.

Plaintiff also cites *Carroll v. J.M. Smucker Co.* as holding "referrer URLs, IP addresses, and browser-level metadata as addressing or routing-type information under the federal scheme." Opp. at 7. But this decision *never* even addresses this topic, because it involved a completely different claim, and the court was simply dismissing the defendant on personal jurisdiction grounds – for the same reason the Court should do here. Then Plaintiff makes up a "wrongful purpose" element for Section 638.51 out of whole cloth, and cites *Avery* and *Nakai*, which also have no relevance to that proposition *or* Section 638.51. Opp. at 12. Indeed, as Unilever previously addressed, *Nakai* affirmed that "a communication sent via the internet was completely dissimilar to a phone call," and ruled that Nakai had no reasonable expectation of privacy that the other party *would not disclose the actual content of* person-to-person **sexual messages – under CIPA**. *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010). For Plaintiff to argue that this *binding* appellate case somehow supports the proposition that the Dove website cannot collect infinitely less sensitive information is beyond absurd. Clearly, if a party to a communication over the Internet can disclose private sexual conversations, then a party can safely disclose that a website visitor is one of 3.5 billion people who uses Google Chrome.

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff then returns to *Heiting*, which supposedly "recognized that the Legislature chose language … broad enough to encompass modern electronic signaling." Opp. at 17. But that is the *exact opposite* of the court's holding: "CIPA **cannot reasonably be read as broadly** as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device." *Heiting*, 2025 WL 2993673, at *4 (emphasis added). In fact, Plaintiff claims that *Heiting* really addressed "first-party logging: HP deployed TikTok's pixel to identify visitors to HP's own site for HP's operational use." Opp. at 16. Simply put, Plaintiff just makes this up. To say that companies are using *TikTok* as an operational tool is comically absurd. In reality, Plaintiff's Complaint is simply a copy of the hundreds of otherwise identical Section 638.51 complaints concerning TikTok that claim American websites are "collaborating with the Chinese government to obtain [visitors'] phone number and other identifying information without the visitors' knowledge or consent." *See e.g. Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *1 (N.D. Cal. June 24, 2025).

More broadly, Plaintiff's invention of the term "first-party website analytics" is similarly made up out of whole cloth. Opp. at 1. Plaintiff's counsel's privacy policy unequivocally states that "[w]e **share your Personal Information with third parties** to help us use your Personal Information, as described above."[4] And "as described above," that "Personal Information" includes the exact information (and more) alleged to be collected by the Dove website. *Id.* And the "use" expressly includes "targeted advertisements or marketing communications we believe may be of interest to you," including through Facebook, Google and Bing. Plaintiff's

---

[4]    *See* https://www.nathanlawpractice.com/privacy-policy/ (emphasis added).

counsel's representations to the Court cannot be reconciled with their own privacy policy.

Significantly, Plaintiff's characterizations of the authority above (and much more) are patently false. Further, the frequent citation of cases without pin cites is indicative of AI usage, particularly when the cases do not remotely stand for the propositions for which they are cited.[5] To be frank, AI usage is the *best-case scenario* here – because no reasonable person could read these cases and characterize this authority in this manner. This conduct should not be well taken by the Court. *See Premier Com. Corp. v. FMC Corp.*, 139 F.R.D. 670, 674 (N.D. Cal. 1991) (sanctioning attorney because "frivolous arguments and misstatements of law waste not only the parties' time and resources, but they also waste the Court's time and resources.").

## III. PLAINTIFF CONTINUES TO CONSPICUOUSLY FAIL TO IDENTIFY ANY CONCRETE HARM FROM VISITING A COMMERCIAL WEBSITE, AND DOING NOTHING MORE.

Unilever established that the Ninth Circuit has held multiple times that individuals have no reasonable expectation of privacy in the signaling information collected by the technology ostensibly at issue here. Mem. at 17 (citing, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008)). And more recently, both the Ninth and Eighth Circuits, among many other courts, including California state courts,[6] have recently addressed the exact issue presented here: whether a plaintiff

---

[5]     *See* https://www.lexology.com/library/detail.aspx?g=29385f5f-c3ae-42a3-b44c-cad88818baa4#:~:text=On%20the%20one%20hand%2C%20the,dockets%20and%20facilitating%20case%20management

[6]     *See People v. Stipo*, 195 Cal. App. 4th 664, 668–69 (2011) (noting that "[e]very federal court to address this issue has held that subscriber information" is not protected, and "users have no expectation of privacy" in signaling information associated with telephone and Internet activity); *see also Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *6 (Cal.Super. Sep. 09, 2024) ("courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record

suffers any concrete injury by visiting a commercial website, doing nothing more, and having information related to that visit shared with third parties. Mem. at 17-18. And these courts have consistently answered this question in the negative. Indeed, the Ninth Circuit went out of its way to *sua sponte* hold that the plaintiff in *Daghaly* did not suffer any concrete injury by having information related to her website visit "transmitted to third parties." *Daghaly*, 2024 WL 5134350, at *1; *see also Jones*, 124 F.4th at 540 (8th Cir. 2024) (holding "'[b]reezy declarations' of an intangible yet concrete injury" – no different than Plaintiff's here – "without support won't suffice" to plausibly establish standing); *Popa v. Microsoft Corp.*, 153 F.4th 784, (9th Cir. Aug. 26, 2025) (holding that the collection of much more detailed information on a commercial website does not result in any injury as a matter of law because it is not remotely similar to "highly offensive" *public* disclosure of *private* facts actionable at common law).[7]

---

information about those communications (in which a person does not have a reasonable expectation of privacy)") (citation omitted); *Levings, Jr. v. Open Text Corp.*, No. 24STCV05440, 2024 WL 5672082, at *6 (Cal.Super. Sep. 03, 2024); *Casillas v. BOP LLC*, No. 24STCV15581, 2025 WL 2161288, at *4 (Cal.Super. June 18, 2025) (dismissing trap-and-trace case without leave to amend and collecting cases holding that there is no reasonable expectation of privacy in signaling information exchanged over the Internet); *Martin v. Conopco, Inc*., Los Angeles Superior Court Case No. 24STCV30397, Granting Defendant's Demurrer to Plaintiff's First Amended Complaint, at 12-15.

[7] As the Court of Appeal recognized in *Popa*, because Article III standing requires the plaintiff to allege an injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," the Third, Seventh, Tenth, and Eleventh Circuits have all held that consumers cannot bring federal statutory claims challenging private, business-to-business disclosures. *See Barclift v. Keystone Credit Services, LLC*, 93 F.4th 136, 145 (3d Cir. 2024); *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 733 (7th Cir. 2023); *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 827 (10th Cir. 2022); *Hunstein v. Preferred Collection & Management Services, Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*). Although these courts used different methodologies, they all reached the same conclusion: that business-to-business

And while Plaintiff curiously cites *Forrester* multiple times, she misses the fundamental point of its holding as applied to these digital slip-and-fall cases: if the government can lock up a person for life because it doesn't need any permission to seize personally-identifiable signaling information showing that a *specific person* visited a *specific website*, on the ground that this person has no reasonable expectation of privacy in this data being exchanged across the Internet, how could Plaintiff possibly have *any* expectation of privacy in the even more innocuous data collected *by the very websites* she is visiting?  It should be an obvious point that our Constitutional framework is built around protecting citizens **first and foremost from government** invasions of privacy. *See* U.S. Const. amend. IV.  And if it's uniformly held that there is no reasonable expectation of privacy that could prevent the federal government from finding out exactly what illegal content someone is viewing on the Internet (and then locking them up for life), then it is that much more unreasonable to claim that there's a legitimate invasion of privacy here by visiting an informational website about soap.

Ultimately, as Judge Wu correctly noted in dismissing an otherwise identical trap-and-trace complaint, there has to be "a close historical or common-law analogue for their asserted injury." *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *3 (C.D. Cal. July 12, 2024).  And Plaintiff understandably never attempts to establish how visiting a *public* website on the *public* Internet, where *anonymous* metadata is allegedly collected, is remotely close to any historical torts. *See also Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (dismissing Section 638.51 complaint and holding [i]f Defendant

---

disclosures are fundamentally unlike the public disclosures actionable at common law and thus do not cause the kind of concrete harm Article III requires. The same analysis applies here with equal force.

14

only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location)."); *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (dismissing trap-and-trace complaint for lack of any injury because "acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website" could not be associated with reasonable expectation of privacy).

At bottom, "how dare your public website collect the anonymous signaling information my browser is disclosing to it" is not a claim that has a remotely close common-law analogue.  And, as the Court of Appeals and numerous other courts have held in indistinguishable cases, these digital slip-and-fall claims are devoid of any actual injury and should be dismissed on this ground alone, with prejudice.

## IV.  PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER UNILEVER.

Unilever also demonstrated that the Court lacks personal jurisdiction over Unilever because (1) it is a Delaware corporation not subject to general jurisdiction in California, Mem. at 20-21 and (2) specific jurisdiction is also lacking, as the Dove website at issue, and its alleged collection of otherwise anonymous metadata, is not purposefully targeted at California residents in any way.  Mem. at 21-23.  Indeed, as Unilever raised in its first motion to dismiss, and was forced to do so again after being ignored by Plaintiff when she "amended" her Complaint, Unilever is a holding company that does not operate the Dove website, as conspicuously stated on the website itself.  Mem. at 11.

As an initial matter, when personal jurisdiction is challenged, a "plaintiff must produce ***admissible evidence*** to support the court's exercise of personal jurisdiction." *Hancock v. Hitt,* No. C–98–960–MMC–(ARB), 1998 WL 345392, at *2 (N.D.Cal. June 9, 1998) (emphasis added); *Fujitsu–ICL Sys. Inc. v. Efmark Serv. Co.,* No. 00–

CV–0777–W–(LSP), 2000 WL 1409760, at *3 (S.D.Cal. June 29,2000) ("a prima facie showing means that plaintiff has produced **admissible evidence**, which, if believed, would be sufficient to establish the existence of personal jurisdiction") (emphasis added).  Plaintiff has not done so here, and the case should be dismissed on this ground alone.

Even if Plaintiff had tried to meet her evidentiary burden (she did not), and even if Unilever operated the Dove website (it does not), the Court should still hold that personal jurisdiction is lacking here – as numerous courts have done in indistinguishable cases. *See*, *e.g.*, *Conohan v. Gen Digital, Inc.*, No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at *2 (C.D. Cal. Feb. 19, 2025) (holding that the applicable purposeful direction requires weighing "whether the defendant '**individually targeted' a plaintiff** in that specific forum.") (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)) (emphasis added); *see also id* at 4 (citing *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024) (also dismissing template trap-and-trace complaint on personal jurisdiction grounds "[b]ecause the law is clear that a defendant cannot be sued in any forum where its website is visible"); *Moody v. Case-Mate, Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) (dismissing, with prejudice, an otherwise identical trap-and-trace complaint on personal jurisdiction grounds, and further holding that "*Briskin* is entirely factually distinguishable").

Plaintiff does not dispute that the Dove website did not individually target Plaintiff in any way, or that she purchased anything from the website (no one can). *That* concession by itself is dispositive here, no different than *Gen Digital*.  Indeed, it's the *same* complaint, just with different analytics tools purportedly at issue.  For her part, Plaintiff instead engages in the legally irrelevant bait-and-switch that since vendors utilized by the Dove website fortuitously have offices in California,

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

somehow that amounts to purposeful direction on *Unilever's* part.  But this is like arguing every individual with an iPhone would be subject to personal jurisdiction in California for a trap-and-trace claim because Apple is sent the same types of "signaling information" when a person receives a call, text, iMessage or email, and that information is later sent to Apple's iCloud.  Just as over 150 million Americans did not purposefully direct where Apple chose to have its principal place of business, Unilever did not purposefully direct where other companies chose their offices.

And Plaintiff understandably does not contend otherwise.  Indeed, as Judge Breyer held recently in dismissing another trap-and-trace complaint on personal jurisdiction grounds, "third parties' conduct cannot establish personal jurisdiction over" a Defendant.  *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 1083214, at *3 (N.D. Cal. Apr. 10, 2025) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  Indeed, well before the Court of Appeal adopted the three-part *Schwarzenegger* test in 2004, it was clearly established that "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990); *see also Speidel v. Markota*, 2021 WL 3463895, at *4 (C.D. Cal. 2021) (finding no personal jurisdiction where party's vendor relevant to case was located in California).

Plaintiff's reliance on the Ninth Circuit's recent *Shopify* decision is also misplaced.  Opp. at 13-14 (citing *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025)).  There, the Ninth Circuit expressly based its decision on the fact that Shopify allegedly knew the location of consumers like Briskin *before* **installing tracking software onto their devices in California** that gave rise to the claim.  *Id.* at n.13 ("The SAC alleges that Shopify knew that the consumer is in California before it actually transacts the payment process").  In other words, the allegations critical to the Ninth Circuit's analysis were that (1) Shopify expressly knew the plaintiff was located in California, (2) it targeted plaintiff's device by installing persistent tracking

code on the plaintiff's device, again, knowing it was occurring in California, and (3) this all occurred as part of a transaction Shopify was facilitating that would also be targeted at California. *Id.* at \*14 (holding that "Briskin's claims 'arise out of' Shopify's contact with Briskin's device, which Shopify allegedly knew was in California.").

Accordingly, this case is no different than the First Circuit's decision in *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 93 (1st Cir. 2024), or the Third Circuit's comparable decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024), both of which involved websites merely collecting information from website visitors, and doing nothing to expressly target the plaintiffs. In fact, the California Court of Appeal refuses to assert personal jurisdiction over out-of-state defendants in much closer cases. For example, in *Jacqueline B. v. Rawls Law Group, P.C.*, 68 Cal.App.5th 243 (2021), the Court of Appeal refused to exercise jurisdiction over a Virginia law firm related to a malpractice tort claim after the firm knowingly represented a California resident and communicated with her with knowledge of her location in California. *Id.* at 255. As the court held, "Defendants did not purposefully direct any activities toward California residents. At most, the law firm operated a website that could be accessed by California residents, but the website did not target California residents specifically and it was plaintiff who first contacted defendants." *Id.*

Ultimately, the only alleged conduct at issue here was the operation of common website analytics tools in New York, where the alleged collection of *otherwise anonymous* metadata took place on Dove's website. Plaintiff's claim arose when that data was "captured" in New York. As a result, the analysis can never get beyond the second *Schwarzenegger* factor – that "the claim must be one which arises out of or relates to the defendant's forum-related activities" – because no Unilever entity has forum-related activities giving rise to Plaintiff's claim. Accordingly, the

Court should refuse to exercise personal jurisdiction over Unilever and dismiss this case with prejudice.

## V.    TRAP AND TRACE DEVICES ARE EXPRESSLY LIMITED TO THIRD-PARTY INTERCEPTIONS AND ARE STRICTLY LIMITED TO TELEPHONE LINES.

Unilever established that as a matter of law, a trap-and-trace device is expressly limited by its incorporated definitions "to the **interceptions** of wire and electronic communications.  It does not apply to stored communications or stored content."  Mem. at 15, 24-26 (citing Penal Code §§ 629.51, 638.50).  And under 50 years of binding CIPA precedent, a party to a communication indisputably cannot "intercept" it. Mem. at 12-13.  Further, Section 638.51 independently cannot apply to Internet data exchanges based on the overall statutory scheme, the relevant legislative history and judicial interpretations of the applicable statutory language that the Legislature must be considered to have adopted.  Mem. at 12-15, 27.

Indeed, the application of these statutes to website analytics technologies is facially nonsensical – because the statutory definitions exclude any devices that obtain **content information**.  Section 638.50(b)-(c). Mem. at 28-29.  And as absurd as it is to characterize viewing a website as a "communication" protected under "wiretapping" laws, the only *possible* "content of the communication" here could be the website itself.  And that is *exactly* what Plaintiff is claiming is being recorded here.  Opp. at 4 (claiming the analytics tools "identify[] **the precise portion of the site viewed**.") (emphasis added).  In short, Section 638.51 is strictly limited to devices placed by third parties on *telephone lines*, and its application to websites is foreclosed by the plain language of the statute.[8]

For her part, Plaintiff simply invents elements that appear nowhere in the

---

[8]    *See Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 at 4 (Cal.Super. Jan. 27, 2025) ("'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing, addressing or signaling information **from telephone numbers, and not internet communications such as websites**.") (emphasis added).

statute, such as an alleged two-party consent requirement, "incidental content and minimization," and "wrongful purpose." Opp. at 9-12. Again, Plaintiff simply made these elements up, as they are not remotely supported by the plain language of the statutes at issue *nor* the cases she "cites." More than that, despite Unilever's repeated invitations, Mem. at 10, 15, Plaintiff never explains how the ubiquitous use of Caller ID would *not* violate the Plaintiffs' Bar contrived view of this criminal law. And walking through that analysis puts the lie to these meritless claims.

### A.    Parties To A "Communication" Are Categorically Exempt.

Begin, as we must, with the statutory language. A "trap and trace device" is "a device or process that **captures the incoming** electronic or other impulses that identify the **originating number** or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, **but not the contents of a communication**." Cal. Penal Code § 638.50.[9] Section 638.51, in turn, broadly states that "[e]xcept as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." *Id.* § 638.51.

Now apply this prohibition to *anyone* using Caller ID on their cell phone. Is Caller ID a process that identifies the incoming originating number? Of course it is. That is exactly what Caller ID does: it identifies the telephone number of the person calling you. Does Caller ID ever "capture" the content of a call? No. Would it function exactly the same if the person on the other end of the phone never says a word? Yes, it would. It therefore easily meets the definition of a process that captures the originating number, but not the content of a communication – i.e., Caller

---

[9]    The very language employed – "capture" – denotes taking something by force under its plain meaning. That can hardly be applicable to a website receiving information disclosed by a visitor's browser. And as the Supreme Court instructs, the Court should interpret the words of the statute at issue here using "their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

ID is a trap and trace device. Any iPhone or similar smartphone's "Phone" application that records outbound call history would likewise meet the definition of a pen register.

Next, the question becomes, how can the hundreds of millions of Americans that have smartphones and Caller ID *not* be committing a violation of California criminal law if someone in California calls them or they call a California number? In other words, how can a person get around the broad prohibition in Section 638.51(a) that states "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53"?

First, there's the court order. Let's say a person in New York, where Unilever is located, traveled to California to proactively seek a court order so they could use their Caller ID without fear of being sued or prosecuted in California. Would they be eligible to do that? No, not at all – only peace officers can obtain a court order to use a trap and trace device *on specific telephone lines*, and even then, only with probable cause that another crime is occurring. *See* Cal. Penal Code 638.52-53. Thus, there is no ability for *anyone* not a police officer to obtain a court order to use Caller ID – none.

That leaves the prefatory "[e]xcept as provided in subdivision (b)" carveout in 638.51(a) as the *only* potential defense left to your average American with Caller ID. But does *anything* in subsection (b) of Section 638.51 actually authorize a cell phone subscriber to *use* a trap and trace device? **No, it doesn't.** As Unilever highlighted previously, Mem. at 15-16, and undisputed by Plaintiff, the permitted uses of PR/TTs in subsection (b) – the only ones left – **only permit "[a] provider of electronic or communication service may use** a pen register or **a trap and trace device** for any of the following purposes." Cal. Penal Code § 638.51(b). This bears repeating. **There is no defense** – or any other statutory authorization – that would allow ***a user of*** **a communication service to use a trap and trace device. Only a**

**communications service provider may do so.**  More plainly, there is not **a single provision** in Section 638.51 that would allow any of the hundreds of millions of Americans who use Caller ID every day to actually use this ubiquitous technology – *if* Plaintiff's interpretation were remotely accurate.

But they clearly are not.  As Unilever established, the incorporated definitions, again, are expressly limited to "the interceptions of wire and electronic communications." Cal. Penal Code § 629.51(b).  And parties to a communication do not *intercept* anything.  They *receive* – which is why no one would say "did you intercept that email I sent you?"  Indeed, the California Supreme Court expressly held that "section 631" – CIPA's interception statute – "does not penalize the secret recording of a conversation by one of the *participants*." *Ribas v. Clark* (1985) 38 Cal.3d 355, 360 n.3 (emphasis in original).

This conclusion is further compelled by the fact that the California Legislature simply copied the Federal Wiretap Act's definitions verbatim when porting these law enforcement statutes into California law to immunize local law enforcement officers under the Patriot Act.  Mem at 12 n. 8.  And it is equally well established that the Federal Wiretap Act is a one-party consent statute.  *See* 18 U.S.C. § 2511(2)(d) (it shall not be unlawful under this chapter … where such person is a party to the communication").  It therefore makes perfect sense that the California Legislature **would not address a party's use of trap and trace devices** when the Legislature was simply copying federal law that clearly excepted parties from the scope of the law.  Indeed, the **only** provision that makes consent a defense – to the communications service provider – simply requires "the consent **of *the* user** of that service." Cal. Penal Code. § 638.51(b)(5) (emphasis added).  **Singular**.

Put another way, when the Legislature desires to require that *all* parties to a communication consent, it clearly and unambiguously knows how to draft such language. *See, e.g.*, Cal. Penal Code 631(a) ("who willfully and without the consent

of **all parties to the communication**"); *Id.* § 632(a) ("A person who, intentionally and **without the consent of <u>all parties</u>** to a confidential communication"). This "all party consent" requirement is conspicuously absent from the trap-and-trace statutes copied directly from the Federal Wiretap Act. And under well-recognized principles of statutory construction, differences between statutes in related laws must be presumed to be deliberate choices. *See Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning."); *see also Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025) ("When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.") (*citing Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . different terms usually have different meanings.").

Ultimately, as multiple courts have recently recognized, applying Section 638.51 to a party to a purported communication would criminalize all forms of modern communications – **without any defense available**. Plaintiff's litigation-driven interpretation of this law would not only produce such objectively absurd results, but it would further require the Court to graft onto Section 638.51 an "all-party consent" requirement that appears nowhere in the statute. The only plausible interpretation – and what *Heiting* (and numerous other cases) actually hold – is that parties to a purported communication cannot violate Section 638.51.

### B. <u>Plaintiff Expressly Alleges Facts Indicating That Analytics Software Obtains the Content of Communications, and Therefore Cannot Be A Trap-and-Trace Device.</u>

As both federal and state courts have expressly held when faced with the same cookie-cutter CIPA complaints, the only "content" a website visitor is invariably seeing is the website itself. And *that* information is allegedly what is being tracked first and foremost. Indeed, Plaintiff goes out of her way to emphasize that is

"*precisely*" what is being recorded.  Opp. at 4.  In short, Plaintiff expressly alleges that the analytics software does capture the content of the *only* "communication" that allegedly occurred on Dove's website – her webpage views.  Thus, these claims are fundamentally self-defeating because a trap and trace device, like a pen register, is by definition "a device or process … reasonably likely to identify the source … but **not the contents** of a communication."  Cal. Penal Code § 638.50(c) (emphasis added).  Thus, there is a very good reason why the Legislature did not mention the Internet and websites one time when enacting this statute: because it wouldn't make any sense. *See, e.g.*, *Royal Caribbean*, 2025 WL 1745726, at *4 (citing Judge Berle's same holding in *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025); *See* Boniadi Declaration [Dkt. 20-2]*, Conopco* at 11; *Dermalogica* at 3.

It's that simple.  Analytics software that tracks website interactions is "reasonably likely to identify" the *only* content Plaintiff allegedly viewed for certain – the website itself.  Plaintiff has therefore pled herself out of court, as this technology cannot be a trap-and-trace device as a matter of law.  Further amendment under these facts would be futile, and dismissal with prejudice is warranted for this independent reason.

## VI.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice, as any amendment would be futile.

Respectfully submitted,

Dated: December 29, 2025                **ARENTFOX SCHIFF LLP**

By:*/s/ Lynn R. Fiorentino*
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Unilever United States, Inc.

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## **LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Unilever United States, Inc. certifies that this brief contains 5,591 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

Dated: December 29, 2025          **ARENTFOX SCHIFF LLP**


By:*/s/ Lynn R. Fiorentino*
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Unilever United States, Inc.

DEFENDANT UNILEVER UNITED STATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT